2018 IL App (4th) 160107

NO. 4-16-0107

FILED
August 6, 2018
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| JASON MARZONIE, | ) | No. 14CF167 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Holder White and Turner concurred in the judgment and opinion.

**OPINION**

¶ 1        In April 2014, the State charged defendant with (count I) participating in the manufacture of more than 400 grams but less than 900 grams of methamphetamine; (count II) possessing more than 400 grams but less than 900 grams of methamphetamine; (count III) possessing, transporting, or storing a methamphetamine precursor in any form other than a standard dosage form with the intent that less than 10 grams of methamphetamine or a substance containing methamphetamine be manufactured; and (count IV) possessing, transporting, or storing methamphetamine manufacturing material with the intent that it be used to manufacture methamphetamine. 720 ILCS 646/15(a)(2)(D), 60(b)(5), 20(b)(2)(A), 30(b) (West 2014).

¶ 2        In October 2015, the jury found defendant guilty on all counts. In January 2016, the trial court sentenced defendant and assessed various fines and fees against him. The circuit clerk later assessed new fines and fees that the court did not authorize.

¶ 3 Defendant appeals, arguing (1) his convictions violate the one-act, one-crime doctrine, (2) the prosecutor committed reversible error during closing argument, and (3) the additional fines imposed by the circuit clerk must be vacated. We disagree and affirm.

¶ 4                                    I. BACKGROUND

¶ 5                                    A. The Information

¶ 6         In April 2014, the State arrested defendant after the police found methamphetamine, methamphetamine precursor, and other materials in his abandoned vehicle. Later that month, the State charged defendant with (count I) participating in the manufacture of more than 400 grams but less than 900 grams of methamphetamine; (count II) possessing more than 400 grams but less than 900 grams of methamphetamine; (count III) possessing, transporting, or storing a methamphetamine precursor in any form other than a standard dosage form with the intent that less than 10 grams of methamphetamine or a substance containing methamphetamine be manufactured; and (count IV) possessing, transporting, or storing methamphetamine manufacturing material with the intent that it be used to manufacture methamphetamine. 720 ILCS 646/15(a)(2)(D), 60(b)(5), 20(b)(2)(A), 30(b) (West 2014).

¶ 7                                    B. The Jury Trial

¶ 8         In October 2015, defendant's case proceeded to a jury trial.

¶ 9                                    1. *The State's Evidence*

¶ 10         Clayton Woodard, a trooper with the Illinois State Police, testified that on April 16, 2014, at 6:15 a.m., he went to a traffic accident in Vermilion County. He found at the scene a damaged construction sign and a vehicle's license plate lying on the side of the road. Woodard stated that he then located an unoccupied Jeep Cherokee approximately three blocks away. It had obvious signs of damage, and its rear license plate matched the license plate he found at the sce-

ne of the accident. Woodard testified that (1) he observed items commonly used for manufacturing methamphetamine inside the vehicle and (2) defendant was the registered owner of the vehicle.

¶ 11 Troy Davis, an Illinois State Police trooper, testified that he processed the items found inside the vehicle that were suspected of being used for methamphetamine manufacturing, which included the inner parts of lithium batteries, starting fluid, a garden hose with reinforced tubing, a modified air tank, and coffee filters. Davis stated that a substance weighing 777.8 grams located inside the vehicle field-tested positive for methamphetamine. Davis stated that the police took a 30-milliliter sample of the substance. Davis noted that a white powder found in the vehicle field-tested positive for pseudoephedrine, which is a precursor of methamphetamine. A chemist at the Illinois State Police crime lab later testified that the 30-milliliter sample tested positive for methamphetamine and that the white powder tested positive for pseudoephedrine.

¶ 12 Eric Millis, an evidence custodian for the Vermilion County Metropolitan Enforcement Group (VMEG), testified that he searched the vehicle after the Illinois State Police removed the suspected drugs and found (1) defendant's driver's license, (2) defendant's checkbook, (3) an electric bill and other mail addressed to defendant, and (4) receipts for pseudoephedrine-based cold pills.

¶ 13 Pat Alblinger, a deputy with the Vermilion County Sheriff's Office, testified that he went to the accident scene on April 16, 2014, and was later dispatched to a residence in Danville. Alblinger testified that Erica Bennett and Jesse Harper were at that residence but defendant was not.

¶ 14 Erica Bennett testified that she received a phone call from Harper on the early morning of April 16, 2014. After the phone call, Bennett directed Randy Huskey to go and pick

up Harper. Huskey picked up Harper, defendant, and a third person and brought them back to Bennett's home in Danville. Bennett testified that all three people were panicking when they arrived at her house and that defendant left about 20 minutes later. She noted that defendant was already gone when the police arrived at her home. On cross-examination, Bennett admitted frequent drug use during April 2014. She further conceded that she used to be friends with Harper and that Harper used to supply her with methamphetamine. She also conceded that, on the date in question, she originally told the police that Harper was not at her residence. She also admitted that she had pleaded guilty and was on probation in an unrelated methamphetamine case.

¶ 15        Jeremiah Christian, a police officer for the City of Champaign, testified that he located defendant on April 16, 2014, at approximately 4 p.m. Christian testified that defendant, upon opening the door of his residence, spontaneously stated that the police must be here for his missing vehicle. Christian took defendant into custody for questioning.

¶ 16        Benjamin Striger, a police officer for the City of Danville, stated that he used the National Precursor Log Exchange (NPLE) to determine who had purchased the cold pills containing pseudoephedrine. Striger noted that the NPLE is a database that logs the purchase of pseudoephedrine-based cold pills and that individuals must sign for and present a valid photo ID to purchase such pills. Striger stated that four receipts for pseudoephedrine-based cold pills were found in defendant's vehicle. Based on the NPLE database, Striger testified that defendant had purchased pseudoephedrine-based cold pills four times during March and April 2014. He further testified that according to the NPLE database, Harper had not purchased pseudoephedrine-based cold pills since August 2011.

¶ 17                              2. *The Defense*

¶ 18        Following the State's case-in-chief, defendant moved for a directed verdict, which

- 4 -

the trial court denied. Defendant declined to testify or present any other evidence.

¶ 19                                   C. Closing Arguments

¶ 20          The State argued that, based upon the physical evidence and Bennett's testimony, it had proved defendant guilty beyond a reasonable doubt. In response, defendant conceded that the police found methamphetamine and other related materials in his vehicle but maintained that the State failed to prove him guilty beyond a reasonable doubt. Defendant argued that Harper could have been solely responsible for all of the criminal activity, rhetorically asking the jury, "Who is Jesse Harper? Where is Jesse Harper?"

¶ 21          The State objected, and at a sidebar conference outside the presence of the jury, the State asked to inform the jury that Harper had already pleaded guilty to methamphetamine manufacturing and other crimes arising from the same incident. Defendant argued "the State could have subpoenaed Jesse Harper. *** It's not our burden to establish where Jesse Harper is. We were rightfully pointing out a hole in the State's case." The State responded that defendant opened the door to informing the jury that Harper pleaded guilty to crimes arising from the same incident. Over defendant's objection, the trial court gave the State permission to disclose that Harper pleaded guilty to methamphetamine-related offenses arising out of the same incident.

¶ 22          Following the trial court's ruling, defense counsel argued that "Jesse Harper pleaded guilty to this offense. The secret is out. It was Jesse Harper." Defendant argued that Harper could have used defendant's photo ID to purchase pseudoephedrine-based cold pills. Moreover, defendant argued that Harper could have been solely responsible for the methamphetamine manufacturing. Defendant further argued that Bennett falsely implicated him to protect Harper. Defendant also attacked Bennett's credibility based on her prior drug use and for being on probation.

¶ 23　　　　In rebuttal, the State argued that it had proved defendant guilty beyond a reasonable doubt based on the evidence found in defendant's vehicle, the evidence connecting defendant to the purchase of pseudoephedrine-based cold pills, and Bennett's testimony placing defendant at the scene of the crime. The State further argued that "Jesse Harper *** plead [*sic*] guilty to this offense, and he plead [*sic*] guilty to this offense because primarily [*sic*] of Erica Bennett's statements that day." The State further argued that Bennett's plea deal "had nothing to do with this case. She testified she wasn't promised anything, that this case had nothing to do with her case. You take that as the truth. There is no evidence stating otherwise, and believe me, if there was, you would hear about it."

¶ 24　　　　　　　　　　　D. The Guilty Verdict and Sentencing

¶ 25　　　　In October 2015, the jury found defendant guilty on all counts. In January 2016, the trial court sentenced defendant to 20 years in prison on count I, 20 years on count II, 7 years on count III, and 7 years on count IV. The court ordered that all sentences run concurrently. The court also assessed a $100 VMEG fee, $3000 methamphetamine assessment fee, a $1000 fine, a $100 crime lab fee, and court costs. The circuit clerk later assessed various fines and fees against defendant that the court did not authorize.

¶ 26　　　　This appeal followed.

¶ 27　　　　　　　　　　　　　　II. ANALYSIS

¶ 28　　　　Defendant appeals, arguing (1) his convictions violate the one-act, one-crime doctrine, (2) the prosecutor committed reversible error during closing argument, and (3) the additional fines imposed by the circuit clerk must be vacated. We disagree and affirm.

¶ 29　　　　　　　　　　　A. The One-Act, One-Crime Doctrine

¶ 30　　　　In this case, defendant was charged with and convicted of count I, participating in

the manufacture of more than 400 grams but less than 900 grams of methamphetamine; count II, possessing more than 400 grams but less than 900 grams of methamphetamine; count III, possessing, transporting, or storing a methamphetamine precursor in any form other than a standard dosage form with the intent that less than 10 grams of methamphetamine or a substance containing methamphetamine be manufactured; and count IV, possessing, transporting, or storing methamphetamine manufacturing material with the intent that it be used to manufacture methamphetamine. 720 ILCS 646/15(a)(2)(D), 60(b)(5), 20(b)(2)(A), 30(b) (West 2014).

¶ 31    On appeal, defendant argues that "[b]ecause all offenses include the same physical act—operating a mobile methamphetamine lab on the same day—counts II, III, and IV were included within count I, and these convictions and their sentences should therefore be vacated." Alternatively, defendant argues that possessing methamphetamine is a lesser-included offense of participating in the manufacture of methamphetamine. Compare 720 ILCS 646/60(b)(5) (West 2014), with *id.* § 15(a)(2)(D). We reject both arguments.

¶ 32                    1. *The Applicable Law*

¶ 33    Under the one-act, one-crime doctrine, a defendant cannot be convicted of multiple offenses "carved from the same physical act." *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844 (1977). The application of this doctrine is a question of law reviewed *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97, 927 N.E.2d 1179, 1189 (2010).

¶ 34    The one-act, one-crime doctrine involves a two-step process. *People v. Coats*, 2018 IL 121926, ¶ 12. First, a reviewing court determines whether the defendant's conduct involved multiple acts or a single act. *People v. Miller*, 238 Ill. 2d 161, 165, 938 N.E.2d 498, 501 (2010). Multiple convictions for the same act are improper. *Id.* In this context, the definition of an " 'act' " is " 'any overt or outward manifestation which will support a different offense.' "

- 7 -

*In re Rodney S.*, 402 Ill. App. 3d 272, 282, 932 N.E.2d 588, 597 (2010) (quoting *King*, 66 Ill. 2d at 566). Multiple convictions are permitted when a defendant has committed separate acts, despite the interrelationship of those acts. *People v. Poe*, 385 Ill. App. 3d 763, 766, 896 N.E.2d 453, 456 (2008). Likewise, a defendant can be convicted of two offenses even when a common act is a part of both offenses. *People v. Williams*, 384 Ill. App. 3d 327, 339, 892 N.E.2d 620, 631 (2008). Two or more separate acts do not become one act merely because of proximity of time and location. *People v. Pearson*, 331 Ill. App. 3d 312, 322, 770 N.E.2d 1183, 1193 (2002).

¶ 35        Second, if the conduct involved multiple acts, the reviewing court must determine whether any of the offenses at issue are lesser-included offenses. *Miller*, 238 Ill. 2d at 165. If an offense is a lesser-included offense, multiple convictions are improper. *Id.*

¶ 36        The abstract-elements approach is the proper method to determine whether one offense is a lesser-included offense of a greater offense. *Id.* at 174-75. Under this approach, a comparison is made of the elements of the two offenses. *Id.* at 166. "If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *Id.* In other words, in order to be a lesser-included offense, it must be impossible to commit the greater offense without necessarily committing the lesser offense. *Id.*

¶ 37        In *People v. Bush*, 2015 IL App (5th) 130224, ¶ 3, 37 N.E.3d 903, the defendant was found in possession of pseudoephedrine, lithium batteries, "Heet" (isopropyl alcohol), and cold packs. The defendant was charged with and convicted of (1) unlawful possession of methamphetamine precursor (720 ILCS 646/20(a)(1) (West 2012)) and (2) unlawful possession of methamphetamine-manufacturing materials (720 ILCS 646/30(a) (West 2012)). *Bush*, 2015 IL App (5th) 130224, ¶ 3. On appeal, the defendant argued that his convictions violated the one-act,

one-crime doctrine. *Id.* ¶ 5. The Fifth District noted that the "defendant possessed two separate items: (1) methamphetamine precursor (pseudoephedrine), and (2) methamphetamine-manufacturing materials (lithium batteries, "Heet," and cold packs)." *Id.* ¶ 11. The court then concluded that "[w]hile the acts of possession committed by defendant in the instant case are closely related, under the statutory scheme implemented by our General Assembly pursuant to the [Methamphetamine Control and Community Protection Act (Act) (720 ILCS 646/1 *et seq.* (West 2014))], they are separate and distinct acts." *Bush*, 2015 IL App (5th) 130224, ¶ 12. Likewise, the court concluded that "[t]his is not a case where one offense could be considered a lesser-included offense, as methamphetamine precursor and methamphetamine-manufacturing materials are separate and distinct items under the Act." *Id.* ¶ 11. Accordingly, the court concluded that the defendant's convictions for unlawful possession of methamphetamine precursor and unlawful possession of methamphetamine-manufacturing materials did not violate the one-act, one-crime doctrine. *Id.* ¶¶ 11-12.

¶ 38                    2. *Defendant Committed Multiple Acts*

¶ 39          Defendant's convictions are not based upon precisely the same physical act. *Coats*, 2018 IL 121926, ¶ 11. Count I dealt with *participation* in the manufacture of methamphetamine. 720 ILCS 646/15(a)(2)(D) (West 2014). Count II concerned *possession* of methamphetamine. *Id.* § 60(b)(5). Count III dealt with possession, transportation, or storage of methamphetamine *precursor*. *Id.* § 20(b)(1). Finally, count IV concerned the possession, transportation, or storage of methamphetamine *manufacturing material*. *Id.* § 30(a). Although the acts committed by defendant were closely related, we conclude that "under the statutory scheme implemented by [the legislature], they are separate and distinct acts." *Bush*, 2015 IL App (5th) 130224, ¶ 12.

¶ 40    Defendant is incorrect when he argues that he only committed one act of "operating a mobile methamphetamine lab." Defendant attempts to merge distinct acts merely because they occurred at the same time and place. However, separate acts do not become one act merely because of proximity in time and location. *Pearson*, 331 Ill. App. 3d at 322. Rather, *participating*, *transporting*, *storing*, and *possessing* are each separate acts. See *id.* at 321-22. Moreover, the interrelationship of separate acts does not prevent multiple convictions. *Poe*, 385 Ill. App. 3d at 766. Accordingly, within the meaning of the one-act, one-crime doctrine, defendant committed separate acts. See *Bush*, 2015 IL App (5th) 130224, ¶ 12.

¶ 41                     3. *There Is No Lesser Included Crime*

¶ 42    Possession of methamphetamine is not a lesser-included offense of participating in the manufacture of methamphetamine. The Act states that "It is unlawful knowingly to *possess* methamphetamine or a substance containing methamphetamine." (Emphasis added.) 720 ILCS 646/60(a) (West 2014). Generally, in drug cases, the element of possession requires the defendant's knowledge of the presence of the illicit substance and his immediate and exclusive control over it. *People v. Scott*, 2012 IL App (4th) 100304, ¶ 19, 966 N.E.2d 340. In contrast, the Act defines "participation" as follows:

> " 'Participate' or 'participation' in the manufacture of methamphetamine means to produce, prepare, compound, convert, process, synthesize, concentrate, purify, separate, extract, or package any methamphetamine, methamphetamine precursor, methamphetamine manufacturing catalyst, methamphetamine manufacturing reagent, methamphetamine manufacturing solvent, or any substance containing any of the foregoing, *or to assist in any of these actions, or to attempt to take any of these actions, regardless of whether this action or these actions result*

- 10 -

*in the production of finished methamphetamine*." (Emphasis added). 720 ILCS 646/10 (West 2014).

¶ 43     Under the plain language of the Act, one can be guilty of participating in the manufacture of methamphetamine merely by *assisting* in the production of methamphetamine. This assistance could occur in many forms such as (1) supplying the raw materials to manufacture methamphetamine; (2) providing the knowledge, equipment, or capital to manufacture methamphetamine; or (3) consenting to the manufacture of methamphetamine on your property. An individual who assists in this capacity could be guilty of participation in methamphetamine manufacturing without ever possessing methamphetamine or a substance containing methamphetamine. *Id.* § 15(a)(1). Possession, by contrast, requires knowing possession of methamphetamine or a substance containing methamphetamine. *Id.* §§ 60(a), 20(b)(1), 30(a). Accordingly, methamphetamine possession is not a lesser-included offense of methamphetamine manufacturing because both crimes contain different elements and it is possible to commit the greater offense without necessarily committing the lesser offense. *Miller*, 238 Ill. 2d at 166.

¶ 44                    B. Prosecutorial Misconduct

¶ 45     Defendant also argues that the prosecutor committed reversible error when he improperly bolstered Bennett's testimony and argued facts not in evidence. Defendant concedes that he forfeited this argument but argues he can prevail under the plain-error doctrine. We disagree.

¶ 46                    1. *The Applicable Law*

¶ 47     Prosecutors are afforded wide latitude during closing argument and may properly comment on the evidence presented and reasonable inferences drawn from that evidence, respond to comments made by defense counsel that invite a response, and comment on the credi-

bility of a witness. *People v. Burman*, 2013 IL App (2d) 110807, ¶ 25, 986 N.E.2d 1249; *People v. Blue*, 189 Ill. 2d 99, 127, 724 N.E.2d 920, 935 (2000). However, a prosecutor may not personally vouch for the credibility of a witness or bolster a witness's testimony. *People v. Effinger*, 2016 IL App (3d) 140203, ¶ 24, 53 N.E.3d 985. It is also improper for a prosecutor to misstate the evidence or argue facts not in evidence. *People v. Green*, 2017 IL App (1st) 152513, ¶ 77, 100 N.E.3d 491. To determine whether a prosecutor's comment in closing argument was improper, a reviewing court must view such comment in its proper context. *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 47, 972 N.E.2d 1272.

¶ 48       Improper remarks during closing argument are reversible error only when they cause substantial prejudice to the defendant. *People v. Thompson*, 2013 IL App (1st) 113105, ¶ 79, 997 N.E.2d 681. Substantial prejudice occurs if the improper remarks were a material factor in the defendant's conviction. *Id.* Improper remarks are a material factor if (1) the jury could have reached a contrary verdict had the improper remarks not been made or (2) the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction. *People v. Wheeler*, 226 Ill. 2d 92, 123, 871 N.E.2d 728, 745 (2007). The strength of the evidence offered against a defendant is often a decisive factor when determining whether the improper statements were a material factor in his conviction. Compare *People v. Johnson*, 208 Ill. 2d 53, 117, 803 N.E.2d 405, 441-42 (2003) (prosecutor's improper statements did not cause substantial prejudice when the State introduced defendant's confession, physical evidence, and the uncontradicted testimony of an eyewitness to the crime), with *Wheeler*, 226 Ill. 2d at 131 (prosecutor's improper remarks caused substantial prejudice when conviction was largely based upon the credibility of the testifying police officers).

¶ 49       2. *The Standard of Review and the Plain-Error Doctrine*

¶ 50 The Illinois Appellate Court is divided on whether to apply an abuse of discretion standard or *de novo* review when reviewing allegations of prosecutorial misconduct. See Ryan T. Harding, *Division in the Illinois Appellate Court: What is the Appropriate Standard of Review for Alleged Prosecutorial Misconduct During Closing Argument?*, 38 N. Ill. U. L. Rev. 504, 508-12 (2018). The First District has applied an abuse of discretion standard. *People v. Willis*, 2013 IL App (1st) 110233, ¶ 102, 997 N.E.2d 947. The Third District and this court have consistently applied *de novo* review. *People v. Palmer*, 382 Ill. App. 3d 1151, 1160, 889 N.E.2d 244, 251 (2008); *People v.McCoy*, 378 Ill. App. 3d 954, 964, 881 N.E.2d 621, 631-32 (2008). Consistent with our court's established precedent, we will continue to apply *de novo* review. *Palmer*, 382 Ill. App. 3d at 1160 (citing *Wheeler*, 226 Ill. 2d at 121); *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539-540, 605 N.E.2d 539, 542 (1992) (decision of an appellate court is not binding upon other appellate districts).

¶ 51 To preserve an alleged error for appeal, a defendant must object at trial and file a written posttrial motion. *People v. Colyar*, 2013 IL 111835, ¶ 27, 996 N.E.2d 575. Failure to do either results in forfeiture. *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675.

¶ 52 Nonetheless, the plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider an unpreserved error when (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479-80 (2005).

¶ 53 Typically, the initial step under either prong of the plain-error doctrine is to determine whether there was a clear or obvious error at all. *Sebby*, 2017 IL 119445, ¶ 49. When a defendant claims first-prong error, he must prove there was a plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against

- 13 -

him. *Herron*, 215 Ill. 2d at 187. In determining if the evidence was close, a reviewing court must evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of the evidence within the context of the case. *Sebby*, 2017 IL 119445, ¶ 53. If the defendant meets his burden, he has demonstrated actual prejudice and his conviction should be reversed. *Id.* ¶ 51.

¶ 54        When a defendant claims second-prong error, he must prove that a structural error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613, 939 N.E.2d 403, 413 (2010). A structural error is an error that renders a criminal trial fundamentally unfair or unreliable in determining a defendant's guilt or innocence. *People v. Bowens*, 407 Ill. App. 3d 1094, 1101, 943 N.E.2d 1249, 1258-59 (2011). Structural errors occur in very limited circumstances, such as a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, or a defective reasonable doubt instruction. *People v. Averett*, 237 Ill. 2d 1, 12-13, 927 N.E.2d 1191, 1198 (2010). Recently, the Supreme Court of the United States has concluded that, subject to exceptions, a violation of the right to a public trial is also a structural error. *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1909-10 (2017).

¶ 55        The defendant bears the burden of persuasion at all times under the plain-error doctrine. *Herron*, 215 Ill. 2d at 187. If the defendant fails to meet his burden, the issue is forfeited and the reviewing court will honor the procedural default. *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1255 (2010).

¶ 56                                3. *This Case*

¶ 57        Errors certainly occurred in this case. First, the prosecutor erred when he argued that "Jesse Harper *** plead [*sic*] guilty to this offense, and he plead [*sic*] guilty to this offense because primarily [*sic*] of Erica Bennett's statements that day." Even though the trial court made

a most unusual ruling to permit the State after closing arguments had begun to inform the jury that Harper had pleaded guilty to a methamphetamine charge arising from the same incident, there was still no evidence introduced establishing *why* he pleaded guilty. Accordingly, by arguing that Harper pleaded guilty because of the strength and veracity of Bennett's statements to the police, the prosecutor's argument was not based on facts in evidence or reasonable inferences from the evidence.

¶ 58    Second, during rebuttal argument, the prosecutor argued that Bennett's plea deal "had nothing to do with this case. She testified she wasn't promised anything, that this case had nothing to do with her case. *You take that as the truth*. There is no evidence stating otherwise, and believe me, if there was, you would hear about it." (Emphasis added.) The prosecutor's statement to take Bennett's testimony "as the truth" was also improper. See *People v. Schaefer*, 217 Ill. App. 3d 666, 668-69, 577 N.E.2d 855, 856-57 (1991) (improper for prosecutor to offer personal opinion on the truth of a witness's statement).

¶ 59    Despite the existence of these errors, defendant fails to satisfy either prong of the plain-error doctrine. First, defendant fails to demonstrate that the evidence was closely balanced. Instead, after a commonsense assessment of the evidence, we conclude the evidence is undisputed that (1) defendant's vehicle was used as a mobile methamphetamine lab, (2) defendant did not report his vehicle as stolen, (3) defendant's checkbook and driver's license were found in his vehicle, (4) his driver's license was used on multiple occasions to purchase pseudoephedrine-based cold pills, and (5) multiple receipts for pseudoephedrine-based cold pills were found in defendant's vehicle. Even if we exclude the testimony of Bennett, the circumstantial evidence against defendant is overwhelming.

¶ 60    Second, although errors occurred, defendant fails to establish that they were so

- 15 -

serious that a structural error occurred. See *People v. Shaw*, 2016 IL App (4th) 150444, ¶ 72, 52 N.E.3d 728 ("The State's closing and rebuttal arguments here do not fit within the limited class of cases where structural error has been found, nor did the arguments affect the fairness of defendant's trial or challenge the integrity of the judicial process."). Therefore, the issue is forfeited, and we will honor the procedural default. *Ahlers*, 402 Ill. App. 3d at 734.

¶ 61                                C. The Improper Fines

¶ 62          Finally, defendant argues that various fines imposed by the circuit clerk were improper and must be vacated. The State concedes this issue. However, in light of the Illinois Supreme Court's recent decision in *People v. Vara*, 2018 IL 121823, ¶ 23, we lack jurisdiction to review the circuit clerk's recording of fines that were not included as a part of the trial court's final judgment. Accordingly, we decline to address this issue.

¶ 63                                III. CONCLUSION

¶ 64          For the reasons stated, we affirm the trial court's judgment.

¶ 65          Affirmed.