NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190880-U

NO. 4-19-0880

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 21, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| JASON MARZONIE, | ) | No. 14CF167 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court reversed the trial court's judgment because defendant stated the gist of a constitutional claim.

¶ 2    In April 2014, the State charged defendant with participating in the manufacture of more than 400 grams but less than 900 grams of methamphetamine (count I); possessing more than 400 grams but less than 900 grams of methamphetamine (count II); possessing, transporting, or storing a methamphetamine precursor in any form other than a standard dosage form with the intent that less than 10 grams of methamphetamine or a substance containing methamphetamine be manufactured (count III); and possessing, transporting, or storing methamphetamine manufacturing material with the intent that it be used to manufacture methamphetamine (count IV). See 720 ILCS 646/15(a)(2)(D), 60(b)(5), 20(b)(2)(A), 30(b) (West 2012).

¶ 3    In October 2015, the jury found defendant guilty on all counts. In January 2016,

the trial court sentenced defendant to 20 years in prison.

¶ 4       In July 2019, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)). Defendant claimed his trial counsel was ineffective because counsel dissuaded him from accepting a plea offer by falsely telling defendant that his codefendant, Jesse Harper, would testify favorably for defendant at trial. In September 2019, the trial court dismissed defendant's petition at the first stage of proceedings.

¶ 5       Defendant appeals, arguing that his petition for postconviction relief set forth the gist of a constitutional claim. We agree and reverse.

¶ 6                                I. BACKGROUND

¶ 7                               A. The Information

¶ 8       In April 2014, the State arrested defendant after the police found methamphetamine, methamphetamine precursor, and other materials in his abandoned vehicle. Later that month, the State charged defendant with participating in the manufacture of more than 400 grams but less than 900 grams of methamphetamine (count I); possessing more than 400 grams but less than 900 grams of methamphetamine (count II); possessing, transporting, or storing a methamphetamine precursor in any form other than a standard dosage form with the intent that less than 10 grams of methamphetamine or a substance containing methamphetamine be manufactured (count III); and possessing, transporting, or storing methamphetamine manufacturing material with the intent that it be used to manufacture methamphetamine (count IV). See 720 ILCS 646/15(a)(2)(D), 60(b)(5), 20(b)(2)(A), 30(b) (West 2012).

¶ 9                               B. The Jury Trial

¶ 10      In October 2015, defendant's case proceeded to a jury trial. A full recitation of the

evidence can be found in the opinion resulting from defendant's direct appeal. See *People v. Marzonie*, 2018 IL App (4th) 160107, 115 N.E.3d 270. We therefore recite only those facts relevant to the issues presented in this appeal.

¶ 11                                     1. *The State's Evidence*

¶ 12          Clayton Woodard, a trooper with the Illinois State Police, testified that on April 16, 2014, at 6:15 a.m., he went to the scene of a traffic accident in Vermilion County where he found a damaged construction sign and a vehicle's license plate lying on the side of the road. Woodard stated he then located an unoccupied Jeep Cherokee approximately three blocks away. It had obvious signs of damage, and its rear license plate matched the license plate he found at the scene of the accident. Woodard testified that (1) he observed items commonly used for manufacturing methamphetamine inside the vehicle and (2) defendant was the registered owner of the vehicle.

¶ 13          Troy Davis, an Illinois State Police trooper, testified that he processed the items found inside the vehicle that were suspected of being used for methamphetamine manufacturing. Davis stated that a substance weighing 777.8 grams located inside the vehicle field-tested positive for methamphetamine. Davis noted that a white powder found in the vehicle field-tested positive for pseudoephedrine, which is a precursor of methamphetamine. Further testing at the Illinois State Police Crime Lab confirmed those results.

¶ 14          Erica Bennett testified that she received a phone call from Jesse Harper in the early morning of April 16, 2014. After the call, Bennett directed Randy Huskey to pick up Harper. Huskey picked up Harper, defendant, and a third person and brought them back to Bennett's home in Danville. Bennett testified that all three people were panicking when they arrived at her house and that defendant left about 20 minutes later. She noted that defendant was

already gone when the police later arrived at her home.

¶ 15        Jeremiah Christian, a police officer for the City of Champaign, testified that he located defendant on April 16, 2014, at approximately 4 p.m. Christian testified that defendant, upon opening the door of his residence, spontaneously stated that the police must be here for his missing vehicle. Christian took defendant into custody for questioning.

¶ 16                    2. *The Defense*

¶ 17        Following the State's case-in-chief, defendant declined to testify or present any other evidence. Harper was never called to testify.

¶ 18                    C. The Guilty Verdict and Sentencing

¶ 19        The jury found defendant guilty on all counts. In January 2016, the trial court sentenced defendant to 20 years in prison to be served at 75% on count I, 20 years on count II, 7 years on count III, and 7 years on count IV. The court ordered that all sentences run concurrently. Defendant appealed, and this court affirmed. *Marzonie*, 2018 IL App (4th) 160107, ¶ 64.

¶ 20                    D. The Postconviction Petition

¶ 21        In July 2019, defendant *pro se* filed a postconviction petition in which he argued that trial counsel was ineffective because counsel dissuaded him from accepting a plea offer. Defendant further claimed his appellate counsel was ineffective because appellate counsel "[f]ailed to raise issues that should have been raised." Defendant wrote in his petition, "Trial counsel did not attempt to interview or call as a witness codefendant Harper after he (trial counsel) was informed that Harper would testify that the defendant was not present at the time of the incident." Defendant also wrote the following:

> "Trial counsel misinformed the defendant during pretrial plea bargaining
>
> discussions. After codefendant Harper accepted a plea deal. Trial counsel told the

defendant that Harper had accepted a plea and that he (Harper) 'was going to testify.' This was untrue and dissuaded the defendant from accepting any plea deals, knowing that Harper would testify to the defendant not being present the morning of the incident."

¶ 22    Defendant attached to his petition an affidavit from Harper in which he averred that, if called to testify, he would have said defendant "was not present, did not participate in, and had no knowledge of the contents of the vehicle, including but not limited to, the methamphetamine related materials, the location of the accident, and its use on said date."

¶ 23    In September 2019, the trial court entered an order in which it dismissed defendant's petition because, among other reasons, the claim that defendant was misinformed by trial counsel regarding plea negotiations was "an issue known at the time of appeal." Regarding the allegation of ineffective assistance of appellate counsel, the court wrote, "The Petition does not specifically address what these issues are or how if raised they would have changed the outcome."

¶ 24    This appeal followed.

¶ 25                    II. ANALYSIS

¶ 26    Defendant appeals, arguing that his petition for postconviction relief set forth the gist of a constitutional claim. We agree and reverse.

¶ 27            A. The Law Regarding Postconviction Petitions

¶ 28    The Act provides a three-step process for determining whether a defendant was denied his constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2018). Within the first 90 days after the petition is filed and docketed, the trial court shall dismiss a petition summarily if the court determines it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). A

petition may be dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *People v. Hatter*, 2021 IL 125981, ¶ 23. A petition lacks an arguable basis in law or fact if it is based on an indisputably meritless legal theory or a fanciful factual allegation. *Id.*

¶ 29    "The threshold for a petition to survive summary dismissal at the first stage of the proceedings is low, given that most postconviction petitions are drafted by *pro se* petitioners with little legal knowledge or training." *Id.* "[T]o survive summary dismissal, a petitioner is only required to include a limited amount of detail and need not present formal legal arguments or citations to legal authority." *Id.* ¶ 24.

¶ 30    "[T]he well-pleaded allegations in the petition and supporting documents will be accepted as true unless it is affirmatively demonstrated by the record that a trier of fact could never accept their veracity." *People v. Robinson*, 2020 IL 123849, ¶ 60.

¶ 31    This court reviews first-stage dismissals under a *de novo* standard of review. *Hatter*, 2021 IL 125981, ¶ 24.

¶ 32            B. The Law Regarding Ineffective Assistance of Counsel

¶ 33    A defendant's claim of ineffective assistance of counsel is analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Cathey*, 2012 IL 111746, ¶ 23, 965 N.E.2d 1109. To prevail on such a claim, "a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496, 931 N.E.2d 1198, 1203 (2010). To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness. *People v. Evans*, 209 Ill. 2d 194, 219, 808 N.E.2d 939, 953 (2004) (citing *Strickland*, 466 U.S. at 687-88). "When a guilty plea is challenged on ineffective assistance

grounds, the prejudice prong of *Strickland* is satisfied if a reasonable probability exists that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." *People v. Miller*, 346 Ill. App. 3d 972, 982, 806 N.E.2d 759, 767 (2004). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 283 Ill. 2d 302, 317-18, 939 N.E.2d 310, 319 (2010).

¶ 34             C. The Trial Court Erred When It Dismissed Defendant's

Ineffective Assistance Claim

¶ 35        In his petition, defendant stated the gist of a constitutional claim. Defendant claimed that his attorney told him that Harper would testify at his trial and thereby dissuaded him from taking a plea offer. Defendant claimed he was offered an agreement to plead guilty to a Class 2 offense in exchange for eight years in prison but rejected it because of counsel's assurance that Harper would testify for him.

¶ 36        The first part of the ineffective assistance of counsel analysis is deficient performance. Taking defendant's allegations as true, as we must at this stage, counsel acted deficiently. Convincing a defendant to reject a plea offer based upon a false promise that the codefendant would testify would clearly be outside the bounds of permissible attorney behavior.

¶ 37        We emphasize that we take no position regarding whether counsel *actually* committed this error. However, at this stage, we are required to accept defendant's claim as true unless it is affirmatively rebutted by the record. Because defendant's allegations, if true, would amount to deficient performance, defendant has satisfied this prong at this stage.

¶ 38        The second part of the ineffective assistance of counsel analysis is prejudice. To show prejudice under these circumstances, defendant must show that a reasonable probability

exists that he would have accepted the plea offer absent counsel's deficient performance. *People v. Hale*, 2013 IL 113140, ¶ 19, 996 N.E.2d 607 (citing *Missouri v. Frye*, 566 U.S. 134, 147 (2012)). Harper received a negotiated sentence of eight years in prison and, as the State noted at defendant's sentencing, "That exact same offer was tendered to [defendant], as late as October 26, 2015." The State also noted that Harper's plea involved "the Class 2 felony offenses" but "[d]efendant has been convicted of more serious offenses." In other words, had defendant accepted the plea agreement, he would have received eight years in prison on a Class 2 felony conviction. Because he rejected the offer, he was convicted of a Class X felony with a special penalty of 12 to 50 years in prison, for which he ultimately received 20 years in prison to be served at 75%.

¶ 39　　　　The State provided defendant a very tempting offer. We conclude defendant has alleged sufficient facts which, under the most favorable light required at the first stage of proceedings, are sufficient to show prejudice.

¶ 40　　　　We again emphasize that we express no opinion on whether trial counsel was, in fact, ineffective. That determination is to be made at a later stage when (1) defendant has the benefit of appointed counsel to help him articulate his claims and (2) the State has the opportunity to respond. However, because defendant stated the gist of a constitutional claim, the trial court erred when it dismissed his petition. For that reason, we reverse the trial court's dismissal of defendant's petition at the first stage of postconviction proceedings and remand for second stage proceedings.

¶ 41　　　　　　　　　　　　　　III. CONCLUSION

¶ 42　　　　For the reasons stated, we reverse the trial court's judgment and remand for second stage postconviction proceedings.

¶ 43　　　　Reversed and remanded.