**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240111-U

Order filed March 18, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) )  ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0111 Circuit No. 17-CF-343 |
| OLUWASEUN KASSIM, | ) ) ) | Honorable Kathy S. Bradshaw Elliott |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Holdridge and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) The trial court complied with Illinois Supreme Court Rule 431(b), and (2) the prosecutor's statements did not constitute plain error.

¶ 2     Defendant, Oluwaseun Kassim, appeals from his convictions for aggravated criminal sexual abuse and battery. Defendant argues (1) the trial court failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) and (2) he was denied a fair trial based on the State's closing arguments. We affirm.

¶ 3             I. BACKGROUND

¶ 4    Defendant was charged with aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2016)) and battery (*id.* § 12-3(a)). The charges alleged defendant placed his hand on the breast and buttocks of E.V. on May 30, 2017. The case proceeded to a jury trial on June 27, 2022.

¶ 5    During *voir dire*, the court read the four Rule 431(b) principles for the jury. When the court asked the first juror whether he understood and accepted the principles, the juror responded, "I understand." This juror was ultimately selected as the jury foreperson.

¶ 6    E.V. testified she was born in May 2003, and was 20 years old at the time of trial. On May 29, 2017, she had a sleepover at her friend Lizzy's house. Lizzy lived with her parents; sister, Julie; brothers; and half-brother, defendant. Defendant slept in the basement. That night, E.V., Lizzy, and Julie watched TV in the living room where E.V. planned to sleep. Lizzy and Julie fell asleep around midnight while E.V. was still awake, "on [her] phone still watching the TV." The TV was "at a decent volume towards where [Lizzy and Julie] were able to sleep through it."

¶ 7    At approximately 1 a.m., defendant came upstairs. Defendant asked E.V. if she wanted to go downstairs and hang out. E.V. declined, and defendant went back downstairs. Defendant returned upstairs looking for the TV remote. E.V. stood up to help defendant search the couch. Defendant then touched E.V.'s buttocks and breast over her clothes. E.V. laid down on the couch and pulled the blanket over her. Defendant moved his hands under the blanket and slid his hand between E.V. and the couch to touch her buttocks. Defendant proceeded to touch E.V.'s breast. E.V. swatted defendant's hand away and told him "no." Defendant told E.V. not to tell anyone and then went downstairs. E.V. woke Lizzy and told her what happened. Lizzy stated they would address it in the morning and went back to sleep. The next morning, E.V. told Julie what happened.

E.V. later discussed the matter with police. E.V. did not return to Lizzy's house for a year after the incident. The date of the incident was the last time E.V. saw defendant at the house.

¶ 8    Defendant testified he came to the United States in 2014 when he was 18 years old. On the night of the incident, defendant went to bed at approximately 10 p.m. Defendant was awoken by noise coming from the TV in the living room. He went upstairs and asked E.V. to turn the volume down. E.V. was awake on the couch on her phone, and she stated she did not know where the remote was. Defendant looked around the room but could not find it. He asked E.V. if he could check the couch she was lying on, and she agreed. E.V. remained on the couch as defendant searched between the cushions. Defendant found the remote in a couch cushion and turned down the volume on the TV. He then returned downstairs and went to sleep. He denied touching E.V. while looking for the remote. Defendant went to work the next morning, but he returned to the house after receiving a message from his mother. At home, defendant spoke to police officers.

¶ 9    The prosecution introduced body camera footage of defendant's interrogation on May 30, 2017. In the recordings, defendant stated when he asked E.V. where the TV remote was, she pointed to a space underneath the table in the living room. Defendant grabbed the remote and turned the volume down.

¶ 10    Before closing arguments, the court informed the jury, "opening and closing arguments are not evidence." The prosecutor began closing arguments stating, "[o]n May 30th of 2017, [E.V.] had a sleepover at her friend Lizzy's house. Her friends fell asleep. She doesn't. She's up watching TV. She's on her phone. The TV is low. Clearly there's two girls in the room sleeping with the TV on." The prosecutor later stated, "[E.V.] told you that she was laying on the couch watching TV on her phone."

3

¶ 11    After summarizing E.V.'s testimony, the prosecutor argued, "that's the only version of this event that we have ever heard from [E.V.] That's it. [E.V.] has been consistent throughout, this is what happened." The prosecutor further argued, "[s]o what we have, ladies and gentlemen, is one very consistent version of events from [E.V.] And it's consistent because she's telling the truth. And what we have from the defendant is two vastly different versions of the same event, vastly different."

¶ 12    Defense counsel argued E.V.'s credibility was diminished because she continued to visit Lizzy's house even though it should have been "a house of horrors for [E.V.] *** given the gravity of what happened." In rebuttal closing, the prosecutor addressed defense counsel's argument, stating,

> "And we shouldn't disbelieve [E.V.] because she went back over to the house. That is the most offensive thing that was said in this courtroom. [E.V.] should give up her life. [E.V.] should give up her friends. [E.V.] should never have any contact with these people because of what the defendant did to them.

> But because she did have contact, because she did, she's not telling you the truth. Offensive, that is offensive, ladies and gentlemen. Every person reacts differently to a sexual assault, every single person. Put yourself in that position and see how you would react.

> And what did [E.V.] tell you, I didn't go back to that house for one year and the defendant wasn't there. And, yes, I went on vacation with that family because that's my best friend and that's a person I've known all my life.

4

> She should give up her best friend because her best friend's [ ]brother
> molested her, that's offensive and it does not make what [E.V.] said not true. It just
> doesn't."

The prosecutor further contrasted E.V., who, "said one thing and one thing only," with defendant who, "said different things."

¶ 13      After arguments, the court again instructed the jury, "[n]either opening statements nor closing arguments are evidence. And any statement or argument made by the attorneys which is not based on evidence should be disregarded." The jury was further instructed, "[n]either sympathy nor prejudice should influence you."

¶ 14      The jury found defendant guilty of aggravated criminal sexual abuse and battery. Defendant was sentenced to a total of four years' imprisonment. This appeal followed.

## II. ANALYSIS

¶ 15      On appeal, defendant argues (1) the court failed to comply with Rule 431(b), and (2) he was denied a fair trial based on the State's closing arguments. Defendant failed to preserve either issue at the trial level, thus forfeiting the issues. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant asks us to review the issues under the first prong of the plain error doctrine. The first step in applying the plain error doctrine is determining whether a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). We address each issue respectively.

¶ 16      A. Rule 431(b)

¶ 17      Rule 431(b) requires trial courts to confirm that every potential juror accepts and understands four principles of law, including:

> "(1) that the defendant is presumed innocent of the charge(s) against him or her;
>
> (2) that before a defendant can be convicted the State must prove the defendant

guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

"[T]he plain language of the rule *** does not require the court to explain the principles to the jurors in any particular fashion." *People v. Birge*, 2021 IL 125644, ¶ 34. "Under the plain language, a court complies with Rule 431(b) if it (1) instructs the prospective jurors on the four principles, (2) asks if the prospective jurors understand those principles, and (3) asks if the prospective jurors accept those principles." *Id.*

¶ 18        Defendant does not argue the court's explanation and questioning of the principles was error. Instead, defendant argues the court had an affirmative duty to follow up with the juror who stated he understood the four principles, instead of affirming he both understood and accepted the principles. This case is similar to *People v. Donlow*, 2020 IL App (4th) 170374. There, a juror answered, "I understand," when asked if he understood and accepted a Rule 431(b) principle. *Id.* ¶ 7. The court did not ask any further questions of the juror. *Id.* The Fourth District found no error. *Id.* ¶ 65. In doing so, it noted, "Rule 431(b) simply mandates a specific question and response process." (Internal quotation marks omitted.) *Id.* The court found the trial court complied with the rule where it asked the juror if he understood and accepted the four principles. *Id.* Moreover, whether to engage in follow-up questioning is left to the discretion of the trial court, and there was no evidence in the record the juror failed to accept the principle. See *id.*

¶ 19        We agree with the reasoning of the *Donlow* court. The trial court was in the best position to assess whether further inquiry was necessary. The prospective juror did not convey any misunderstanding or refusal to accept the principles. See, *e.g.*, *People v. Brown*, 2017 IL App (1st) 142197, ¶ 39 (the trial court was required to inquire further with a juror who replied, "I don't

6

understand" when asked whether they understood and accepted the second Rule 431(b) principle). The record contains no evidence the juror failed to accept the principles. We therefore find no clear or obvious error occurred.

¶ 20                                    B. Prosecutorial Misconduct

¶ 21          Defendant next argues he was deprived of a fair trial due to the State's closing arguments because the prosecutor (1) misstated the evidence, (2) insinuated E.V. had made a prior consistent statement, and (3) impermissibly asked the jurors to "put themselves in [E.V.'s] shoes." A prosecutor's comment must be improper and substantially prejudicial to constitute clear and obvious error. *People v. Williams*, 2022 IL 126918, ¶ 49.

¶ 22          "[P]rosecutors have wide latitude in the content of their closing arguments." *People v. Evans*, 209 Ill. 2d 194, 225 (2004). "Closing arguments must be viewed in their entirety, and allegedly erroneous arguments must be viewed in context." *People v. Ammons*, 2021 IL App (3d) 150743, ¶ 43. The prosecutor may remark on the evidence and any fair and reasonable inference the evidence may yield, even if the suggested inference reflects negatively on defendant. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). A prosecutor may not misstate the evidence or argue facts not in evidence. *People v. Marzonie*, 2018 IL App (4th) 160107, ¶ 47. A court may cure the prejudicial effect of improper comments made in closing arguments by instructing the jury that closing arguments are not evidence. *People v. Simms*, 192 Ill. 2d 348, 396 (2000). Absent evidence to the contrary, we presume the jurors followed the instructions provided by the court. *People v. Green*, 2017 IL App (1st) 152513, ¶ 98.

¶ 23          Initially, we note the jury was instructed that the arguments of the parties were not evidence and they should not let sympathy or prejudice influence their decision. There is nothing in the record to rebut the presumption the jury followed these instructions.

7

¶ 24    First, defendant argues the prosecutor's statements that "[t]he TV [was] low," and E.V. "was watching TV on her phone," were misstatements of the evidence. However, even though E.V. never testified the volume was quiet or low, she did testify the TV was at such a volume that Lizzy and Julie were able to sleep through it. The prosecutor's statement that the volume was low was therefore a reasonable inference from the testimony. Further, the statement that E.V. was "watching TV on her phone," must be viewed in the entirety of closing arguments. The prosecution began its closing argument stating,"[E.V.] had a sleepover ***. Her friends fell asleep. She doesn't. *She's up watching TV. She's on her phone.*" (Emphasis added.) The prosecutor's later statement that E.V. was "watching TV on her phone," clearly meant E.V. was watching TV *while* on her phone. We believe this is how the parties and jury understood the statement, particularly given the absence of a contemporaneous objection. The prosecutor therefore did not misstate the evidence.

¶ 25    Second, defendant argues the prosecutor improperly insinuated E.V. made a prior consistent statement. Arguing to the jury that the victim made a prior consistent statement would be inappropriate where no such statement was introduced into evidence. See *Marzonie*, 2018 IL App (4th) 160107, ¶ 47. Here, the prosecutor never expressly stated E.V. provided a prior consistent statement to the State, investigators, or anyone else. Further, even though the statements in isolation could be interpreted as implying E.V. made a prior consistent statement, the statements must be viewed in context. Throughout the prosecutor's closing arguments, she used "we" to refer to the people in the courtroom, not the State. Therefore, when the prosecutor argued, "that's the only version of this event that we have ever heard from [E.V.]," she was not implying E.V. provided a prior consistent statement to the investigators or prosecutors. Instead, the prosecutor

8

was only stating the jury and court heard one version of events from E.V. Stated another way, E.V. solely provided consistent statements *while testifying*. The statements were therefore proper.

¶ 26        Third, defendant argues the prosecutor impermissibly "[a]sk[ed] jurors to put themselves in [E.V.'s] shoes." In rebuttal closing argument, the prosecutor responded to defense counsel's argument that E.V. was not credible because she would not have returned to Lizzy's house if defendant had abused her. In doing so, the State said, "[e]very person reacts differently to a sexual assault, every single person. Put yourself in that position and see how you would react." Generally, an isolated comment inviting jurors to empathize with the victim is not so prejudicial that it constitutes a clear or obvious error. See *People v. Anaya*, 2017 IL App (1st) 150074, ¶¶ 31, 77. The prosecutor asked the jury to consider the sensibility of E.V.'s actions after the incident, not sympathize with her. We cannot say the comment constituted clear or obvious error. See *Id.* ¶ 77. Therefore, defendant has not shown plain error occurred.

¶ 27        Defendant alternatively argues counsel was ineffective for failing to object to the prosecutor's statements. As we have found no clear or obvious error, defendant's ineffective assistance of counsel claim necessarily fails. See *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179 ("Absent a clear or obvious error ***, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture.").

¶ 28                                III. CONCLUSION

¶ 29        For the reasons stated, we affirm the judgment of the circuit court of Kankakee County.

¶ 30        Affirmed.

9