Filed 5/23/08          NO. 4-07-0620

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| LEON PALMER, | ) | No. 01CF1149 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John K. Greanias, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

In January 2006, a jury convicted defendant, Leon Palmer (who had earlier waived his right to counsel and had chosen to represent himself), of residential burglary (720 ILCS 5/19-3 (West 2000)). The trial court later sentenced him to 30 years in prison to be served consecutively with a sentence he had been serving.

Defendant appeals, arguing that (1) because a bona fide doubt existed as to his fitness, the trial court erred by allowing him to represent himself at trial without first ordering a fitness evaluation; (2) the prosecutor's closing argument (a) improperly attacked defendant's integrity and tactics and (b) impugned the exercise of his constitutional right to represent himself; and (3) the court abused its discretion by refusing to revoke defendant's waiver of counsel for postsentencing proceedings. Because we agree only with defendant's third argument, we

affirm and remand with directions.

## I. BACKGROUND

Because defendant challenges neither the sufficiency of the evidence against him nor its admissibility, we discuss the evidence and the case's procedural history only to the extent necessary to put his arguments in context.

In August 2001, the State charged John Doe (identified only by a description of his deoxyribonucleic acid (DNA)) with (1) residential burglary (720 ILCS 5/19-3 (West 2000)) (committed in August 2000), (2) two counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 1998)), (3) unlawful restraint (720 ILCS 5/10-3(a) (West 1998)), and (4) aggravated battery (720 ILCS 5/12-4(b)(8) (West 1998)) (committed in July 1999). In June 2005, based upon a DNA match, the State moved to amend the charging instrument to allege that defendant was the offender. The State explained that it did not know the offender's actual name when it filed the August 2001 charges. The trial court later granted the State's motion to amend.

In August 2005, defendant appeared in court on these charges and stated that he wanted to represent himself. The court admonished him in accordance with Supreme Court Rule 401 (134 Ill. 2d R. 401) and accepted his waiver of his right to counsel.

In September 2005, the State advised the trial court

- 2 -

that because defendant had an extensive criminal record, the possible sentences he faced upon conviction differed from those that the court explained to defendant when he waived his right to counsel. The court then informed defendant that it was going to readmonish him regarding his right to counsel and the correct penalties he faced. The court also explained that defendant had another opportunity to accept the appointment of the public defender's office. After the court again admonished defendant pursuant to Rule 401, defendant (1) persisted in his intent to represent himself and (2) again declined the court's offer of appointed counsel. Defendant also expressed his unhappiness with the proceedings, stating that they were "pointless."

During the course of pretrial and posttrial proceedings, defendant pro se filed the following documents: (1) an August 2005 motion to dismiss indictment instanter; (2) an October 2005 motion for severance; (3) a November 2005 motion to dismiss charges; (4) a January 2006 motion to dismiss instanter; (5) a March 2006 motion to reduce his sentence and/or motion to reconsider his sentence; (6) a May 2006 petition for court-appointed counsel in relation to filing an amended motion, brief, and written argument in postjudgment proceedings; (7) a July 2006 petition for writ of coram nobis; (8) a July 2006 petition for relief from judgment; (9) a July 2006 petition to this court "for leave to [file an] interlocutory appeal"; (10) a January 2007

- 3 -

letter to the trial court requesting an extension of time to complete his research so that he could file an amended sentencing motion; and (11) a July 2007 motion to reduce his sentence.

In defendant's October 2005 handwritten motion for severance, he wrote the following:  "That the above said cases was [sic] alleged to have been committed years apart[,] and if said cases [are] allowed to be consolidated[,] it will prejudice the jury."  Defendant prevailed on this motion, given that the State, in response, elected to try defendant only on the residential-burglary charge.

In defendant's November 2005 pro se motion to dismiss, he "vehemently denie[d] having been anywhere near the alleged crime scene on the day of the event" and contended that the only evidence the State had against him were "the bloodstain and the semen [which] were years old when tested and finally reported[,] causing at least drying, contamination[,] and generally deterioration of the DNA sample."  He asserted that this DNA evidence, without corroboration, was insufficient to establish his guilt. The trial court denied this motion, and the case proceeded to trial.

During defendant's opening statement at trial, he informed the jurors that his blood was present in the residence and that he would try to show them how it got there.  He also told the jury that someone (whose name he did not know) who was

related to the people who lived in the residence invited defendant into the house to drink a beer.  When he dropped the beer, he cut his finger, and "a splatter got on the wall."

The State then presented evidence that a window in a Decatur residence was broken out, and a bloodstain was left, apparently by the burglar, on a table inside the residence near the window.  The family living in the residence testified (1) as to the circumstances surrounding the burglary, (2) that they did not know defendant, and (3) that he did not have permission to be in their residence.  Police and expert testimony described how the bloodstain was processed and resulted in a DNA match for defendant.  After the State rested, defendant declined to put on any evidence.  Based on the evidence, the jury found defendant guilty of residential burglary.

At defendant's February 2006 sentencing hearing, the trial court received the presentence investigation report (PSI), which showed that defendant was 50 years old and had eight prior felony convictions, with his first occurring 30 years earlier. Defendant's convictions included two for residential burglary, two for burglary, and one for attempted burglary.

The State also presented testimony from a woman who stated that as she walked home in Decatur on an evening in July 1999, a man began speaking with her and then dragged her from the road.  As she fought with him, the man hit her, knocking her

unconscious.  When she awakened, she was undressed and the tampon she had been wearing due to her menstruation had been removed. Decatur police officers later found her clothing and the tampon, and subsequent testing showed the semen stain found on the woman's shorts matched defendant's DNA profile.

The State's presentation of this evidence upset defendant, who complained that he had not yet been convicted of this 1999 event and was present in court instead for sentencing regarding the 2000 residential burglary.  The trial court explained that the State was entitled to present this evidence, and defendant responded that he wanted to leave the courtroom, explaining, "You just go on and do what you got to do because I don't want to hear no [sic] more of this kangaroo type of stuff."

After the State completed presenting evidence regarding the 1999 incident, defendant returned to the courtroom, and the trial court sentenced him to 30 years in prison on the residential-burglary charge.

In March 2006, defendant pro se filed a motion to reduce his sentence and/or reconsider the sentence.  In later pleadings related to that motion, defendant for the first time asked for appointed counsel to represent him.  In June 2006, the trial court denied defendant's request for appointed counsel, explaining as follows:

"(1) Defendant waived his constitutional

right to assistance of counsel for proceed-
ings in the [c]ircuit [c]ourt; (2) although
defendant has the right to appointed counsel
on appeal, he does not have the absolute
right to revoke his waiver at this stage of
the proceedings in the [c]ircuit [c]ourt; and
(3) defendant has not shown good cause for
the [c]ircuit [c]ourt to exercise its discre-
tion to allow withdrawal of defendant's waiv-
er of counsel."

In July 2006, defendant pro se filed with this court
his "petition for leave to [file] an interlocutory appeal," which
he stated was being made "pursuant to Supreme Court Rule 308"
(155 Ill. 2d R. 308).  In that petition, defendant asserted that
the trial court erred by not appointing counsel at the
postsentencing stage in view of the "obvious behavior problems
during trial which created sufficient doubt about [defendant's]
competence."  Defendant added the following:  "The trial court
has ignored its reasonable duty to take reasonable measures to
thwart failures of fairness by not investigating his competency
before allowing him to represent his own criminal case *** and
waive counsel."  In August 2006, this court denied defendant's
petition, explaining that Rule 308 does not apply to criminal
cases.

Also in July 2006, defendant pro se filed for writ of coram nobis, challenging his conviction on the ground that the trial court did not make inquiries to determine whether he was competent to waive counsel. In support of that petition, defendant asserted the following:

"Given the behavior by [defendant], including outward fits of disorderly conduct during trial, a sufficient doubt about [defendant's] competence was created which required and warranted further inquiry. The correct course was to suspend trial until evaluation could be made."

In July 2007, the trial court conducted a hearing on defendant's posttrial motions, including his petition for writ of coram nobis, found them to be without merit, and denied them. This appeal followed.

II. ANALYSIS

A. Defendant's Claim That the Trial Court Erred by Not Ordering a Fitness Evaluation of Him

Defendant first argues that his conviction and sentence must be reversed and remanded because the trial court erroneously allowed him to represent himself at trial without first ordering a fitness evaluation when a bona fide doubt existed as to his fitness. Citing People v. Sandham, 174 Ill. 2d 379, 382, 673 N.E.2d 1032, 1033 (1996), and section 104-11(a) of the Code of

Criminal Procedure of 1963 (725 ILCS 5/104-11(a) (West 2004)), he contends that although a defendant is presumed fit to stand trial, the court must still order a fitness hearing <u>sua sponte</u> when a <u>bona fide</u> doubt of fitness arises. Defendant then asserts that

> "[t]hroughout the proceedings in this case, the court never questioned [defendant's] fitness to represent himself, despite repeated indications before and during trial that [he] was unable to understand the nature of the proceedings. Because a <u>bona fide</u> doubt existed as to [defendant's] fitness, the court had a <u>sua sponte</u> duty to appoint competent counsel and to have [defendant] evaluated for fitness."

In support of defendant's claim that the record demonstrates that a <u>bona fide</u> doubt arose as to his fitness to stand trial or to represent himself, he cites the following: (1) when the trial court described one of defendant's motions as "gibberish" and asked him to explain it, defendant responded that he could not see the papers "because of [his] eyes [and his] medical problems"; (2) when defendant was readmonished regarding his waiver of counsel under Supreme Court Rule 401, he objected to the proceedings and initially stood mute in response to the

court's questions; thereafter, when the court asked if he would like the public defender's office to be appointed to represent him, he replied, "I plead the fifth on that"; (3) the remarks defendant made in his opening statement, particularly about how he had been in the burglarized residence legitimately and cut his finger there; (4) "throughout the trial, [defendant] expressed confusion as to the nature of each exhibit and how one spot of blood could yield several exhibits"; (5) "[defendant] had trouble understanding that [one of the residence's occupants] had information that might be harmful to [his] case"; (6) defendant told the probation officer who wrote the PSI that defendant had been suffering from diabetes for 5 1/2 years, had poor vision, had arthritis, and his mental health was "not too good" as a result of depression; and (7) defendant claimed that he took LSD (lysergic acid diethylamide) every day for a year, 20 years earlier, and had extensively smoked cannabis and crack cocaine. Defendant summarized his argument as follows: "The defendant's demeanor, irrationality, and mental[-]health issues should have triggered a <u>bona</u> <u>fide</u> doubt of fitness to waive counsel." We deem defendant's argument to be wholly without merit.

As the supreme court explained in <u>People v. Johnson</u>, 206 Ill. 2d 348, 361-62, 794 N.E.2d 294, 303 (2002), a defendant is considered to be fit if he understands the nature of the proceedings and can assist in his own defense. In <u>Faretta v.</u>

California, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975), the United States Supreme Court held that a defendant had an absolute right to represent himself in a criminal case. Following Faretta, the Supreme Court of Illinois held that fitness to waive counsel requires no more than fitness to stand trial. People v. Redd, 173 Ill. 2d 1, 23, 670 N.E.2d 583, 594 (1996). The standard of review regarding the issue of whether a bona fide doubt existed as to defendant's fitness is abuse of discretion. Sandham, 174 Ill. 2d at 382, 673 N.E.2d at 1033.

This record compellingly demonstrates that defendant fully understood the nature of the proceedings and was clearly able to assist in his own defense. Our earlier reference to some of the documents defendant filed in this case strongly supports this conclusion. Indeed, his three-page August 2005 motion to dismiss indictment instanter demonstrated not only defendant's command of the English language and his ability to write well, but also his understanding of some legal technicalities. For instance, in his October 2005 pro se motion, defendant wrote the following: "Illinois law mandates that a person (inmate) shall be taken before the nearest[,] most accessible magistrate in that area (county), without unnecessary delay[,] and the same holds true for anyone indicted by an information/indictment."

That portions of some of defendant's motions appeared to the trial court to be "gibberish" does nothing to diminish our

conclusion.  See Redd, 173 Ill. 2d at 24, 670 N.E.2d at 595 (noting that the defendant's numerous and voluminous motions and his imprecision in expressing himself as an attorney did not demonstrate that he lacked the mental capacity to waive counsel). Indeed, given the technical nature of the rules that apply to evidence and procedure in criminal cases, we would have expected to see more instances of "gibberish" than the court found.

We explicitly reject defendant's contentions that any deficiencies in his pro se representation lend any support whatsoever to his claim that he was somehow not fit to waive his right to counsel.  See Redd, 173 Ill. 2d at 24, 670 N.E.2d at 594 ("Defendant's ability to articulate his case and to precisely motion the court are merely measures of his proficiency or lack thereof as a lawyer.  His ability to represent himself is not indicative of his competence to choose self-representation"). Ten years ago, this court noted that "a defendant's decision to represent himself is universally viewed as unwise" (People v. Williams, 277 Ill. App. 3d 1053, 1058, 661 N.E.2d 1186, 1190 (1996)), and we adhere to that opinion.  Nonetheless, given Faretta, a defendant retains the constitutional right to choose to represent himself in a criminal trial no matter how unwise that decision may be.  Thus, as long as a trial court has properly admonished a defendant in accordance with Supreme Court Rule 401, we will not protect defendant from the consequences of his

- 12 -

unwise decision to represent himself.

Were we to hold otherwise, we would be inviting defendants "to game the system," a circumstance a California court called, "[p]laying 'the Faretta game'." People v. Williams, 220 Cal. App. 3d 1165, 1169-70, 269 Cal. Rptr. 705, 707 (1990). Both trial and reviewing courts must ever be wary of a defendant who tries to use the exercise of one constitutional right--here, the decision to represent himself at trial--against another--the right to stand trial or waive counsel only if he is fit to do so--especially when that defendant can attempt to change the courtroom dynamics simply by his own conduct or, more likely, his own misconduct.

Almost 30 years ago (even before Faretta), the Fifth District addressed a situation very much like the one in this case. In People v. Black, 68 Ill. App. 3d 309, 312, 385 N.E.2d 899, 902 (1979), the defendant was convicted of armed robbery after waiving his right to counsel and choosing to defend himself. He argued on appeal that the trial court abused its discretion by failing sua sponte to order a fitness hearing. The Fifth District rejected that argument, writing as follows:

> "An accused is not entitled to such a hearing
> unless the trial court has notice of facts
> which raise a bona fide doubt of defendant's
> fitness or competency. [Citation.] A care-

- 13 -

ful reading of the record reveals no evidence
that defendant was unable to understand the
nature and purpose of the proceedings against
him nor unable to prepare a defense. [Cita-
tion.] Apparently[,] defendant's alleged
'irregular conduct' before and at trial was
no more than an attempt to disrupt these
proceedings. Accordingly, the trial court
did not err in failing to order a fitness
hearing on its own motion." <u>Black</u>, 68 Ill.
App. 3d at 314-15, 385 N.E.2d at 903.

We fully agree with <u>Black</u>'s analysis and conclusion and hold that
they apply to this case.

In support of our rejection of defendant's argument, we
note that the trial court demonstrated its awareness of the issue
of fitness when the court, at the September 2005 readmonition
pursuant to Supreme Court Rule 401 regarding defendant's waiver
of his right to counsel (at which proceeding defendant expressed
his displeasure), stated the following:

"For the record[,] I am going to add we have
had this defendant in court before. There is
no basis to find him unfit, so I am not even
going to consider a fitness report. We have
seen his actions. This is [<u>sic</u>] the actions

- 14 -

of a person who understands what is going on, and there is no reason to file a fitness petition."

We conclude that (1) the record fully supports this determination by the experienced trial court and (2) the court did not abuse its discretion by not ordering a fitness examination of defendant.

### B. Defendant's Claim That the Prosecutor's Improper Closing Argument Requires Reversal

Defendant next argues that reversal is required because the prosecutor's "intentional misconduct included attacks on the integrity and tactics of the pro se defendant, and impugned [defendant's] exercise of his constitutional right to represent himself." Defendant concedes that he made no objection to the prosecutor's alleged improper argument but asks this court to review the issue as plain error. Not only do we conclude that no plain error is present, we conclude that the prosecutor's remarks did not constitute error at all. See People v. Williams, 193 Ill. 2d 1, 27, 737 N.E.2d 230, 245 (2000) ("Before invoking the plain[-]error exception, however, 'it is appropriate to determine whether error occurred at all.' People v. Wade, 131 Ill. 2d 370, 376[, 546 N.E.2d 553, 555] (1989)").

In People v. Wheeler, 226 Ill. 2d 92, 123, 871 N.E.2d 728, 745 (2007), the Supreme Court of Illinois recently discussed the applicable law when a defendant complains of a prosecutor's

closing argument and wrote the following:

> "Prosecutors are afforded wide latitude
> in closing argument. [Citation.] In review-
> ing comments made at closing arguments, this
> court asks whether or not the comments engen-
> der substantial prejudice against a defendant
> such that it is impossible to say whether or
> not a verdict of guilt resulted from them."

The supreme court in Wheeler also wrote that "[w]hether state-ments made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews de novo." Wheeler, 226 Ill. 2d at 121, 871 N.E.2d at 744.

During the initial portion of the prosecutor's closing argument, he said that a case of this kind "is probably the hardest type of case for a prosecutor to handle because it looks like Goliath is picking on David, but the thing that you have to realize is that the defendant has a constitutional right to defend himself." The prosecutor then mentioned that whether the jury believed defendant's decision to represent himself was a wise choice or not, defendant made that decision, which was his right. The prosecutor also mentioned that he had "tried to extend [defendant] courtesies and treat him like another lawyer" and did not try to cut corners, adding that the State "gave you a case just like [defendant] would have [had] with an attorney

representing him."  The prosecutor concluded by emphasizing to the jury that the only evidence it could consider was that which "comes from the witness stand, and things that [defendant] may have been saying that weren't backed up or weren't produced as evidence in court, you can't consider."

Regarding these rather mild remarks by the prosecutor, defendant argues to this court that "[b]y emphasizing that [defendant] represented himself, the prosecutor set up his rebuttal during which he demeaned [defendant's] exercise of the right to self-representation."  Before the prosecutor spoke in rebuttal, defendant presented his closing argument pro se and informed the jury that he had his argument all written out but that he hated "to try to talk with paper so I am just going to speak from here, I mean, from my heart."  Defendant then mentioned "the people from forensics [who] spoke about DNA," and added, "I really didn't complete high school or nothing [sic] like that.  I am not going for no [sic] sympathy from nobody [sic], but I was trying to understand what they was [sic] talking about [regarding] the DNA and the exhibits."  Defendant also explained his difficulty speaking about the scientific exhibits "because I was confused so I don't know who else might have been confused by the confusion."

Defendant concluded his closing argument with a request that the jury "realize and take into consideration that ***

- 17 -

things ain't [<u>sic</u>] always the way they appear to be, and you know *** everything is not always put out there for you to understand. Some things are not able to be said. *** I'm pretty sure whatever decision you come up with [will] come from your hearts."

In the prosecutor's rebuttal argument, which was very short, he first noted the strength of the DNA evidence against defendant and, in view of that, remarked

"Sometimes, the best defense in the world is, maybe, not hire a high-powered attorney, represent yourself, and play on the sympathy of the jury.

That has no part in your decision in this case. The decision should come from the testimony you heard from the witness stand and not sympathy that [defendant] is trying to engender."

Defendant deems the prosecutor's rebuttal as containing "intentional insults designed to discredit [defendant] in the jurors' eyes as to his role as defense attorney." Further, defendant contends that these comments penalized him "for asserting his constitutional right to exercise his right to represent himself and improperly diminished his presumption of innocence."

Given the circumstances of this case, we view the prosecutor's remarks as entirely proper. Defendant's

pro se representation was the 800-pound gorilla in the courtroom, and absent an explanation concerning this situation, the jury might well have speculated about it and felt sympathy for defendant's plight, when in fact none was due. Further, absent some explanation, this situation might appear to the jury to be like Goliath picking on David.

In so concluding, we adhere to the views we recently expressed in People v. Montgomery, 373 Ill. App. 3d 1104, 1118, 872 N.E.2d 403, 415 (2007):

"To slightly revise a common saying regarding campaigning for elective office, trying felony cases before a jury 'ain't beanbag.' These are serious matters with high stakes, and we expect advocates in our adversary system of justice to use all of their forensic skills to persuade the jury of the wisdom or justice of their respective positions."

C. Defendant's Claim That the Trial Court Abused Its Discretion by Refusing To Revoke His Waiver of Counsel For Postsentencing Proceedings

Last, defendant argues that the trial court abused its discretion by refusing to revoke his waiver of counsel for postsentencing proceedings. He points out that after sentencing, he pro se filed a series of pleadings, including a motion to

reconsider his sentence, and asked for the appointment of counsel to represent him.  The trial court denied his request.  The State concedes defendant's argument on this point, and we accept the State's concession.

In People v. Baker, 92 Ill. 2d 85, 91-92, 440 N.E.2d 856, 859 (1982), the Supreme Court of Illinois held that a defendant's waiver of the right to counsel carries through to all subsequent proceedings unless (1) the defendant later requests counsel or (2) other circumstances suggest that the waiver is limited to a particular stage of the proceedings.  Here, after representing himself at trial and at the sentencing hearing, defendant sought the appointment of counsel to represent him on his motion to reconsider his sentence.

In People v. Williams, 358 Ill. App. 3d 1098, 1105, 833 N.E.2d 10, 16 (2005), this court held that a hearing on the motion to reconsider sentence is a critical stage of the criminal proceedings.  Thus, an indigent defendant is entitled to the appointment of counsel at that stage.  However, in June 2006, the trial court denied defendant's request for appointed counsel at that stage, ruling, in part, that (1) defendant did not have the absolute right to revoke his waiver and (2) he had not shown good cause for the court to exercise its discretion to allow with- drawal of defendant's waiver of counsel.  We conclude that the court erred by ruling that defendant needed to show good cause

for his request.

In <u>People v. Burton</u>, 184 Ill. 2d 1, 24, 703 N.E.2d 49, 60 (1998), the Supreme Court of Illinois addressed the timing of a defendant's request to waive counsel and wrote the following:

"A number of courts have held that a defendant's request is untimely when it is first made just before the commencement of trial, after trial begins, or after meaningful proceedings have begun.  [Citations.]  Once such proceedings have begun, the trial judge has discretion to deny a defendant's request to represent himself."

Several years before <u>Burton</u>, this court similarly addressed the subject in <u>People v. Ward</u>, 208 Ill. App. 3d 1073, 1081-82, 567 N.E.2d 642, 647-48 (1991), in which we strongly suggested a series of specific points for trial courts to discuss with a defendant who has informed the court that he wishes to waive his right to counsel (in addition to the Rule 401 admonitions).  One of the points we urged a court to make was that "in the event the court accepts defendant's decision to represent himself, defendant will not be given an opportunity to change his mind during trial."  <u>Ward</u>, 208 Ill. App. 3d at 1082, 567 N.E.2d at 648.

If a trial court has fully complied with Rule 401 (and especially if the court has followed our <u>Ward</u> suggestions), the

- 21 -

court can hold the defendant to his election to proceed pro se even though the defendant subsequently changes his mind during trial.  Indeed, considering (1) the importance of judicial administration and (2) the need to avoid giving a defendant the opportunity "to game the system" (as discussed earlier), a court would be justified in informing a defendant of a deadline (perhaps a few weeks before the trial date) by which his decision to proceed pro se at trial will become irrevocable, making clear that it is not just at trial itself that the decision will become irrevocable.

However, nothing about the circumstances in this case-- namely, defendant's request for court-appointed counsel to assist him on his postsentencing motion suggests any abuse of the system.  For whatever reason, defendant finally changed his mind about the wisdom of pro se representation.  We emphasize that defendant's change of mind occurred at a new stage of the proceedings, which constituted a clean slate for the trial court's consideration of the issue.  Thus, the court erred by requiring him to demonstrate good cause for doing so.

Accordingly, although we affirm defendant's residential-burglary conviction, we remand for the appointment of counsel for postsentencing purposes in accordance with the views expressed herein.

### III. CONCLUSION

For the reasons stated, we affirm defendant's residential-burglary conviction and remand for further proceedings in accordance with the views expressed herein.  Because the State has in part successfully defended a portion of the criminal judgment, we grant the State its statutory assessment of $50 against defendant as costs of this appeal.  See People v. Smith, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985), citing People v. Nicholls, 71 Ill. 2d 166, 179, 374 N.E.2d 194, 199 (1978).

Affirmed and remanded with directions.

APPLETON, P.J., and KNECHT, J., concur.