NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190260-U

NO. 4-19-0260

IN THE APPELLATE COURT

FILED
April 8, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| BRIAN KOBIELA, | ) | No. 17CF19 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mark A. Fellheimer, |
| | ) | Judge Presiding. |

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held:* (1) The trial court did not err in the manner it questioned the prospective jurors
pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012).

(2) Defendant failed to establish he was prejudiced by his trial counsel's alleged
ineffectiveness.

(3) Defendant was not unlawfully denied his right to counsel in the trial court after
he was sentenced.

¶ 2    In May 2018, a jury found defendant Brian Kobiela guilty of four counts of delivery

of a controlled substance (heroin) (one gram or more). The jury also found the State proved the

heroin contained fentanyl. On December 4, 2018, the trial court sentenced defendant to concurrent

20-year sentences on the four counts with credit for time served. The court ordered the sentences

in this case to run consecutive to the sentences imposed in Will County case No. 17-CF-672 and

Cook County case No. 17-CR-080901. Defendant appeals, making the following arguments:

(1) the trial court erred by grouping the Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) questions together and asking the potential jurors the questions as a group instead of asking each potential juror each question; (2) defendant received ineffective assistance of counsel from his trial attorney because his attorney elicited previously excluded and highly prejudicial evidence of prior drug transactions between defendant and the State's confidential informant; and (3) the trial court denied defendant his constitutional right to counsel at a critical stage of the proceeding because the court failed to appoint counsel to represent defendant to assist with the preparation of defendant's motion to reconsider sentence. We affirm.

¶ 3                                          I. BACKGROUND

¶ 4        The State charged defendant with four counts of delivery of a controlled substance (heroin) (720 ILCS 570/401(c) (West 2016)) to a confidential source working with the police on January 6, 11, 20, and 24, 2017. In May 2018, defendant's trial was held. During the jury selection process, the trial court admonished the prospective jurors as a group as follows:

> "With regards to this trial, [f]olks, it is a criminal trial, so there are certain criminal propositions. We call them propositions of law or principles of law that apply to this case. I am going to read those propositions to you, four in number. I will then have a follow-up question to you. First will be whether or not you understand those principles of criminal law. And then second is whether or not you accept those principles of criminal law. The way we handle this is just by a show of hands, kind of like kindergarten all over again. When I have a question to the entire group, I will first deal with the folks that I call in the box. I will go to the right side pews and to the left side pews. So the question will be the same. If you have an answer to give, you will just raise your hand. I typically work back to front.

If I happen to blow past you like kindergarten, just keep the hand up and say, hey, Judge, you forgot me. And I will get to your answer.

***

The four principles of criminal law that applies to this case are as follows:

That Mr. Kobiela is presumed innocent of all charges against him.

Two, that before Mr. Kobiela can be convicted, the State must prove him guilty beyond a reasonable doubt.

Three, that Mr. Kobiela is not required to offer any evidence on his own behalf.

And, number four, that if Mr. Kobiela chooses not to testify on his own behalf, that cannot be held against him.

So, first, to the folks here in the box, raise your hand if you understand those principles of criminal law.

All hands are raised.

Follow up. By a show of hands here, do you accept those principles of criminal law? If so. Please raise your hand.

All hands are raised.

To the folks I am calling the right pews here, by a show of hands here, do you folks understand those principles of criminal law? If so, raise your hand.

All hands are raised.

Second question then is do all of you accept those principles of criminal law?

All hands are raised.

The left side pews, same thing. As to those four principles of criminal law, do you understand those principles?

All hands are raised.

And then the follow-up is do all of you accept those principles of criminal law?

Once again, all hands are raised there."

¶ 5 During the trial, James Nathan Rodriguez testified he worked with Inspector Brian Maier of the Livingston County Pro-Active Unit and made controlled buys of heroin approximately eight or nine times, including the four charged controlled buys from defendant at issue in this case. Rodriguez testified he served time in prison for delivery of heroin. He also had a pending charge for delivery of heroin but had not been promised anything in exchange for his testimony. He admitted being a heroin addict and had last used the drug in July 2017.

¶ 6 Rodriguez claimed he had known defendant for approximately 15 years and had purchased heroin from him in the past before working with the police. Defense counsel did not object to Rodriguez's answer. Later, when the State asked Rodriguez how many times he had purchased heroin from defendant, defense counsel objected. During a bench conference, defense counsel argued defendant's conduct before the first charged sale was completely prejudicial and irrelevant. The trial court sustained the objection as it related to any drug transaction before the four charged offenses. The court instructed the jury to disregard Rodriguez's earlier testimony he had purchased heroin from defendant prior to the four charged incidents.

¶ 7 According to Rodriguez, he and Inspector Maier met before each controlled buy. Maier searched Rodriguez and his car before each controlled buy and provided Rodriguez money to make each buy. The State also gave Rodriguez money to pay part of a prior debt Rodriguez

owed defendant. The State did not ask Rodriguez why he owed defendant money. Maier provided Rodriguez with directions how to drive to the arranged location for each controlled buy. After each buy, Rodriguez met Maier, gave Maier the drugs he purchased from defendant, and Maier would then search Rodriguez and his car again.

¶ 8 During Rodriguez's cross-examination, defense counsel asked whether he had missed any rent payments. Rodriguez said he missed several from February to June in 2017. Counsel then asked if the money Rodriguez owed defendant was money defendant loaned Rodriguez for his rent. Rodriguez denied this. Defense counsel then asked Rodriguez about money the police gave him to pay off a prior debt to defendant, which led to the following exchange:

"Q. Correct? They gave you some money, though, to pay off a debt?

A. Yes, sir.

Q. That was not connected with what you say was otherwise a drug deal?

A. It was.

Q. Is that correct?

A. It was connected to drug deals.

Q. It happened during that—during at least one of those incidents, but you told the officers that you owed money to [defendant]?

A. For drugs.

Q. And they gave you that money?

A. Yeah. So I could get more drugs."

Defense counsel also asked how Maier searched Rodriguez and his vehicle before and after the controlled buys. Rodriguez testified Maier emptied his pockets and patted him down. As for the

vehicle, Rodriguez stated Maier "went from the front to the back, through the seats, the console, [and] floor mats," searching everything designed to move.

¶ 9        On redirect examination, the State argued it should be able to introduce evidence Rodriguez could not buy more drugs from defendant until he paid off his prior drug debt because defense counsel opened the door to this line of questioning. The trial court allowed the State to do so. Rodriguez then testified the debt he owed defendant was for drugs and he could not purchase more drugs from defendant if he did not pay off the prior debt.

¶ 10        Inspector Maier testified he was employed by the Dwight Police Department and assigned as a narcotics investigator to the Livingston County Pro-Active Unit, a narcotics task force. According to Maier, both before and after the controlled buys he performed a thorough search of both Rodriguez and his vehicle to ensure Rodriguez was not bringing anything to or taking anything from each controlled buy. Maier did not promise Rodriguez anything other than making the state's attorney's office aware of his cooperation. Before each controlled buy, Maier provided Rodriguez with pre-recorded bills to use and a specific route to take to the pre-arranged location for the buy. Maier observed Rodriguez during the informant's drive to and from the controlled buys. During two of the buys where defendant and Rodriguez were in their respective vehicles, Maier was able to see Rodriguez the entire time. During the other two buys, which took place in defendant's home, Maier was able to see Rodriguez the entire time except when he was in the residence. After each controlled buy, Maier would meet Rodriguez, who would turn over the drugs he purchased and tell Maier how he obtained the drugs. Maier would then search Rodriguez's person and his vehicle. Although Rodriguez was carrying a recording device, Maier was unable to understand what was being said on the recording.

¶ 11        After the four controlled buys, the police obtained a search warrant for defendant's

- 6 -

residence and executed the warrant on January 24, 2017, not long after the final controlled buy. Hypodermic needles were found throughout the residence. The police also found Dormin bottles in defendant's bedroom. Dormin can be used as a cutting agent for heroin. Several empty capsules were found in the bottles. When the warrant was executed, defendant was in the driver's seat of his vehicle and taken into custody. Inside the vehicle, the police found a bundle of cash, including money used in the controlled buy earlier that day, and an identification card belonging to defendant.

¶ 12    After the search, Maier interviewed defendant, who said he had been addicted to heroin for some time and shared heroin with people on occasion. When Maier confronted defendant with evidence of the police investigation, defendant said he was going to prison for a long time. Defendant claimed he used the Dormin to help him sleep.

¶ 13    The jury found defendant guilty on all counts and also found the State established the presence of fentanyl with the heroin. On October 2, 2018, at the scheduled sentencing hearing, the trial court noted defendant had not provided information for the PSI. Defense counsel said he suspected defendant did not believe his trial counsel had done anything to assist defendant in this case. The court then asked if defendant wished to communicate information to court services to assist with preparing his PSI. Defendant's counsel noted he intended to introduce evidence through a third-party witness. Defendant spoke up on his own behalf and expressed his displeasure with the representation he was receiving from the attorney he hired to represent him in this case. The court then asked defendant whether he had compiled the information he wanted to submit to court services for the PSI. Defendant said he had not because he was waiting to hear from his lawyer and did not know what he was supposed to do. The court then asked defendant if he wanted to continue with his current counsel and gave defendant time to decide. Defendant told the court

he wanted to discharge his attorney, needed time to determine whether to hire private counsel or proceed *pro se*, and asked for a continuance, which the court granted.

¶ 14 The trial court allowed defendant to discharge his privately retained attorney and set the case for a status hearing on November 6, 2018, to determine if defendant had hired new counsel or wanted a public defender. The court told defendant he would need to inform the court at the status hearing whether he had hired a new attorney, needed a public defender, or wanted to proceed *pro se*. The court also told defendant he could hire private counsel after November 6 but the sentencing hearing would not be continued. Defendant complained he could not get to the prison law library before the status hearing, but the court responded the status hearing would be held on November 6. The court told defendant it would set the sentencing hearing four to six weeks after the status hearing.

¶ 15 Based on this exchange, defendant told the trial court he would choose to go *pro se* right then, bypassing the status hearing, if the court would not have the sentencing hearing for at least six weeks. Defendant said this would make it easier for him to get into the prison law library. The court told defendant he would give him a date for sentencing. The court offered to appoint a public defender to represent defendant, but defendant declined the offer. The court then warned defendant it would not continue the sentencing hearing if defendant said he needed a public defender when the sentencing date arrived, which defendant said he understood. After a brief recess, the court noted defendant told the court he wanted to discharge his trial counsel and waive his right to counsel for purposes of sentencing and anything else going forward. The court declared this would not affect defendant's right to counsel on appeal. Defendant verified he was not asking for a public defender and acknowledged he understood a public defender would represent him at no cost and assist him with posttrial motions and the sentencing hearing.

¶ 16        The trial court then questioned defendant to determine whether he had the capacity to waive his right to counsel. The court also told defendant presenting his arguments in posttrial motions and at the sentencing hearing would not be as simple as telling his side of the story. Instead, defendant would be required to adhere to technical rules governing posttrial matters and sentencing. When defendant said he was not sure he understood what this meant, the court provided an additional explanation and warned defendant of the potential ramifications of representing himself as shown in the following exchange:

> "THE COURT: Do you *** understand that if you elect here to represent yourself, we sometimes call it 'going pro se,' that you will not be allowed to complain on appeal about the competency of your representation from this point forward.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Now, anything that may have occurred up 'til today, that is an issue any defendant has. But as far as if you decide to represent yourself, on appeal you can't complain about the fact that your representation was not adequate because you represented yourself.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Also, do you understand, sir, that the effectiveness of advocating for your position with regards to post-trial motions and sentencing could be diminished by the dual role of yourself, one, as the defendant; and, two, as the attorney?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you also understand that you will receive no special consideration from the court if you represent yourself one way or the other?

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: I don't treat defendants any differently whether or not they represent themselves or not.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Also, you understand that a lawyer can render important assistance by (a) determining any additional information that should be presented at the sentencing hearing or your post-trial motions; (b) through consultations with the prosecutor regarding any sentencing considerations that need to be presented as well.

Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. And, also, in the event that I accept your decision here to represent yourself, you will not be given the opportunity to change your decision during the sentencing hearing subject to you having the right to hire a lawyer. But that lawyer, you understand, will be expected to be prepared on the day we set for the hearing.

Do you understand that?

THE DEFENDANT: Yes, Your Honor."

Defendant stated (1) he was not being forced or threatened with regard to his decision to represent himself and (2) no one had promised him anything relating to the outcome or sentence in the case.

¶ 17 The trial court also told defendant his sentences on the counts in this case would run concurrently. However, his sentence would run consecutive to sentences he received in other pending cases. In addition, the court admonished defendant he was not eligible for probation and his sentencing range was 7 to 33 years in prison.

¶ 18 The trial court found defendant knowingly and voluntarily waived his right to counsel pursuant to Illinois Supreme Court Rule 401 (eff. July 1, 1984), noting it had no reason to believe defendant was not competent or did not have the requisite capacity to make an intelligent and knowing waiver of his right to counsel. The sentencing hearing was set for approximately two months later on December 4. The court told defendant the sentencing hearing would not be continued even if defendant hired a lawyer.

¶ 19 The State's motions to revoke and forfeit defendant's bond were then discussed. Defendant complained he did not know about the State's motion and thought he was just coming to court for the sentencing hearing. The court noted the bond forfeiture motion was already part of the record in the case, and defendant replied his former counsel never told him about it. The court told defendant the bond forfeiture motion would be addressed on December 4. Defendant did not ask for the appointment of a public defender even though he claimed the case had become more complicated than what he expected.

¶ 20 On November 26, 2018, defendant filed a posttrial motion, asking to set aside the jury verdict. That same day, he filed a motion requesting the appointment of counsel. Defendant stated he did not "know the law" and believed he had the right to counsel. On November 29, 2018, defendant filed another posttrial motion requesting a new trial, arguing his trial counsel failed to

file pretrial motions, talk with defendant, and be prepared for trial.

¶ 21            At the December 4, 2018, sentencing hearing, defendant told the trial court he only decided to proceed *pro se* because he thought his case would be over after he was sentenced, claiming he did not know posttrial motions were necessary and could affect his appeal rights. The court reminded defendant it offered many options to defendant, including the appointment of a public defender, which defendant rejected, and a continuance so defendant could hire a new attorney, which defendant said he did not need. The court told defendant he chose to proceed *pro se*, said he would be ready on December 4, and knew the sentencing hearing would not be continued. Further, the court noted the sentencing hearing had been continued multiple times, defendant was told he would be treated the same whether he had a lawyer or proceeded *pro se*, and defendant knew he would have to prepare for the sentencing hearing while in prison.

¶ 22            The trial court denied defendant's motion to appoint counsel, his motion to continue, and his two posttrial motions. The court then sentenced defendant to 20 years in prison with two years of mandatory supervised release (MSR) and granted the State's bond forfeiture motion. After defendant told the court he would not be able to use the prison law library before the 30-day deadline ran, the court gave defendant an extended period of time, until February 4, 2019, to file a motion to reconsider his sentence or notice of appeal. The court explained to defendant he would need to file a motion to reconsider his sentence before he filed his notice of appeal if he wanted to challenge his sentence. The court then explained defendant would need to file a notice of appeal by February 4 if he did not file a motion to reconsider his sentence. The court also explained defendant could request the appointment of the Office of the State Appellate Defender (OSAD) to assist him with his appeal. Defendant said he understood.

¶ 23            On February 4, 2019, defendant filed a motion to reconsider his sentence. He did

not ask the trial court to appoint counsel to assist him in the trial court. That same day, he filed a notice of appeal, asking for appointment of counsel to represent him on appeal. On April 17, 2019, the court held a hearing on defendant's motion to reconsider sentence. The court denied the motion to reconsider sentence and directed the circuit clerk to prepare a notice of appeal on defendant's behalf and, on defendant's request, appointed OSAD to represent defendant on appeal.

¶ 24        This appeal followed.

¶ 25                              II. ANALYSIS

¶ 26              A. Illinois Supreme Court Rule 431(b) Admonishments

¶ 27        Defendant first argues the trial court erred in the way it admonished the potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). Defendant acknowledges he forfeited this issue but asks this court to review the error pursuant to the plain error doctrine. The supreme court has traditionally identified two situations where it is appropriate to excuse a forfeiture: (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675. The first step of any plain error analysis is determining whether a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 28        According to defendant, the trial court violated Rule 431(b) because the court admonished all the prospective jurors at one time, grouped the admonishments together, and asked for everyone to raise his or her hand if he or she understood the propositions and then to raise his or her hand if he or she accepted the propositions. Defendant argues Rule 431(b) does not allow

- 13 -

a court to question potential jurors in this method.

¶ 29    After the parties filed their respective briefs in this case, our supreme court issued its opinion in *People v. Birge*, 2021 IL 125644, ¶ 27, finding the trial court in that case neither erred by grouping the Rule 431(b) admonishments together when it questioned the prospective jurors nor erred by asking the groups of the prospective jurors to raise their hands, instead of responding verbally, if they (1) understood and (2) accepted the admonishments.  The supreme court noted Rule 431(b) "plainly states that the court can ask the questions to the potential jurors as a group, and the rule does not require that their response be conveyed orally rather than by a show of hands." *Birge*, 2021 IL 125644, ¶ 27.  As a result, defendant's argument in this case fails.

¶ 30                B. Ineffective Assistance of Counsel

¶ 31    Defendant next argues his trial counsel was ineffective because he elicited propensity evidence regarding prior drug transactions between defendant and Rodriguez previously excluded by the trial court. Defendant categorizes this evidence as highly prejudicial. To demonstrate ineffective assistance of counsel, a defendant must show his counsel's performance fell below an objective standard of reasonableness and counsel's performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 692 (1984).  To establish prejudice, a defendant must show a reasonable probability exists the result of the proceeding would have been different absent counsel's errors. *People v. Haynes*, 192 Ill. 2d 437, 473, 737 N.E.2d 169, 189 (2000).

¶ 32    According to defendant, the jurors likely factored in the highly prejudicial propensity evidence into their decision to convict defendant.  Defendant points out his trial counsel recognized the prejudicial and incriminating nature of the informant's testimony regarding prior drug purchases from defendant.  Counsel objected to the State asking the informant how many

- 14 -

times he had purchased heroin from defendant and argued evidence of prior purchases was completely prejudicial and irrelevant to the charged offense. The circuit court sustained defense counsel's objection and struck the prior testimony.

¶ 33    The State then elicited testimony from Rodriguez regarding money he owed defendant but did not inquire into the basis for the debt. However, during cross-examination, defense counsel asked Rodriguez about the money the police gave him to pay off the prior debt, the basis for the debt, and then did not move to strike the informant's testimony the debt was for prior drug transactions. On redirect examination, the informant testified he would not have been able to purchase more drugs from defendant if he did not pay off his prior debt.

¶ 34    The erroneous admission of other-crimes evidence carries a high risk of prejudice and will ordinarily require reversal if the erroneously admitted evidence was "so prejudicial as to deny the defendant a fair trial; that is, the erroneously admitted evidence must have been a material factor in the defendant's conviction such that without the evidence the verdict likely would have been different." *People v. Watkins*, 2015 IL App (3d) 120882, ¶ 45, 25 N.E.3d 1189. The other-crimes evidence at issue here is not highly prejudicial based on the circumstances in this case.

¶ 35    The State had a strong case against defendant. Before each controlled buy, the police searched Rodriguez and his vehicle and followed and observed Rodriguez on his way to and from the controlled buys. After each controlled buy, the police met Rodriguez, who turned over the drugs he purchased, and both he and his vehicle were searched again. Further, in defendant's car, the police found some of the money they provided to Rodriguez to make the controlled buys.

¶ 36    Moreover, regardless of the strength of the State's case against defendant, the

- 15 -

propensity evidence in question here was minimally prejudicial considering the evidence was coming from the same witness who made the controlled buys. This is not a situation where defense counsel elicited evidence defendant had previously been convicted of selling drugs or introduced evidence from additional witnesses regarding drug transactions with defendant. Rodriguez's uncorroborated testimony about prior drug deals with defendant would not have made his testimony regarding the controlled buys any more credible. What made Rodriguez's testimony about the controlled buys credible to the jury was the corroborating information provided by the State through the police officers.

¶ 37        Based on the facts in this case, a reasonable probability does not exist the result of defendant's trial would have been different had the jury not heard the informant's testimony about the prior transactions. As a result, defendant has failed to establish he received ineffective assistance of counsel.

¶ 38                          C. Denial of Right to Counsel

¶ 39        Both our federal and state constitutions guarantee a criminal defendant the right to the effective assistance of counsel (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8) during every "critical stage" of his criminal proceeding (*People v. Vernon*, 396 Ill. App. 3d 145, 153, 919 N.E.2d 966, 975 (2009)). The critical stages of a criminal proceeding include pretrial, trial, and sentencing proceedings. *Vernon*, 396 Ill. App. 3d at 153, 919 N.E.2d at 975. However, a defendant also has a right to make a knowing and intelligent waiver of his right to counsel. *People v. Cleveland*, 393 Ill. App. 3d 700, 704, 913 N.E.2d 646, 650 (2009) (overruled in part on other grounds by *People v. Jackson*, 2011 IL 110615, ¶ 16, 955 N.E.2d 1164).

¶ 40        Before accepting a defendant's waiver of counsel, Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) requires a trial court to inform and make sure a defendant understands

the nature of the charges against him, the minimum and maximum sentences the defendant faces, and the defendant's right to hire counsel or have counsel appointed if he is indigent. As previously stated, the trial court extensively reviewed defendant's options with regard to representation and the hurdles and risks he faced representing himself. The trial court also made clear defendant would be held to the same standard as an attorney. After extensive admonishments, defendant indicated he was going to proceed *pro se* and understood the sentencing hearing rescheduled for two months later in December would not be continued again. Defendant does not argue he was not properly admonished before he waived his right to counsel.

¶ 41        When a defendant waives his right to counsel, the waiver remains in place during the remainder of the proceedings "unless (1) the defendant later requests counsel or (2) other circumstances suggest that the waiver is limited to a particular stage of the proceedings." *People v. Palmer*, 382 Ill. App. 3d 1151, 1162, 889 N.E.2d 244, 253 (2008). Based on our review of the record, defendant neither indicated his waiver was limited nor did the circumstances of this case indicate his waiver was limited to just the sentencing hearing. Further, the trial court admonished defendant he would be representing himself from that point forward in the trial court unless he chose to hire an attorney.

¶ 42        Defendant did ask for the appointment of another attorney on November 26, 2018, less than two months after he waived his right to counsel at the scheduled sentencing hearing but still before his rescheduled sentencing hearing. The next day on November 27, 2018, defendant filed a motion asking for his December 4, 2018, sentencing hearing to be continued. At the scheduled sentencing hearing on December 4, 2018, defendant argued he thought he was doing the trial court a favor by not having the court appoint him a lawyer because he thought the case would be over after he was sentenced. He claimed ignorance as to his obligation to file posttrial

motions to preserve issues for his appeal. However, the court discussed posttrial motions with defendant before he waived his right to counsel, and defendant filed a posttrial motion. Defendant claimed he did not understand enough about the law to be held responsible for something affecting his appeal. After hearing defendant's arguments, the court denied his request for counsel.

¶ 43 We note defendant does not argue the trial court erred in denying his request for counsel at the sentencing hearing. Further, defendant never requested counsel again for the proceedings in the trial court. However, defendant argues the court should have *sua sponte* appointed an attorney to represent defendant after the sentencing hearing or readmonished defendant as to his right to counsel for purposes of preparing and arguing a motion to reconsider defendant's sentence. According to defendant, his waiver of counsel was no longer valid after he requested counsel prior to his rescheduled sentencing hearing.

¶ 44 The cases defendant relies on to support his argument are distinguishable from the situation here. In *People v. Williams*, 358 Ill. App. 3d 1098, 1105, 833 N.E.2d 10, 16 (2005), *People v. Brasseaux*, 254 Ill. App. 3d 283, 286, 660 N.E.2d 1321, 1323 (1996), and *Palmer*, 382 Ill. App. 3d at 1155, 889 N.E.2d at 248, the defendants in those cases requested counsel after they were sentenced. Further, this is not a situation like in *Vernon*, 396 Ill. App. 3d at 145, 919 N.E.2d at 969, where the defendant was not advised of his right to counsel before he represented himself.

¶ 45 Defendant in this case was well aware of his right to counsel and was properly admonished before he waived his right to counsel during the sentencing phase of his case. Further, defendant does not argue the trial court erred in denying his request for counsel, which defendant made before he was sentenced, and defendant did not request the appointment of counsel to assist with his motion to reconsider sentence after he was sentenced.

¶ 46 While postsentencing proceedings are a critical part of proceedings in the trial court

(*Palmer*, 382 Ill. App. 3d at 1162, 889 N.E.2d at 253), this does not mean the court is obligated to *sua sponte* appoint counsel or re-admonish a defendant of his right to counsel after (1) the defendant made a valid waiver of his right to counsel and (2) the trial court later denied the defendant's post-waiver request for counsel. The idea the trial court in this case would need to *sua sponte* admonish defendant he is entitled to counsel or simply appoint counsel to represent defendant right after the court denied defendant's request for counsel—a ruling defendant does not challenge—is a non sequitur.

¶ 47 Defendant's reliance on *People v. Griffin*, 305 Ill. App. 3d 326, 713 N.E.2d 662 (1999), is also misplaced. In *Griffin*, the defendant waived his right to counsel and two weeks later entered a guilty plea. *Griffin*, 305 Ill. App. 3d at 328, 713 N.E.2d at 663. After the trial court sentenced the defendant and admonished him pursuant to Illinois Supreme Court Rule 605(b) (eff. Aug. 1, 1992),

> "[the] defendant sought clarification of the Rule 604(d) motion requirements and asked the court whether he was entitled to the appointment of counsel. Specifically, defendant asked the court whether a motion to vacate the sentence was required to perfect an appeal. Defendant also asked, 'Can I be appointed an attorney to represent me in this appeal?' The trial judge responded that he was so entitled, but the judge declined to advise defendant further, noting that to do so would be to act as defendant's attorney." *Griffin*, 305 Ill. App. 3d at 329, 713 N.E.2d at 664.

The Second District found defendant's actions amounted to an attempt to revoke his waiver of counsel. *Griffin*, 305 Ill. App. 3d at 330, 713 N.E.2d at 664. Further, "[w]hen defendant began asking questions about perfecting an appeal, the trial judge should have asked him whether he wished to revoke his earlier waiver." *Griffin*, 305 Ill. App. 3d at 330, 713 N.E.2d at 664. By not

doing so, the trial court abused its discretion and effectively denied the defendant his right to counsel. *Griffin*, 305 Ill. App. 3d at 330, 713 N.E.2d at 664. The Second District also held a trial judge is required to investigate whether a defendant, who has indicated an intent to file an appeal after entering a guilty plea, wants counsel appointed to assist with any motions required by Illinois Supreme Court Rule 604(d) (eff. Aug. 1, 1992). *Griffin*, 305 Ill. App. 3d at 133-34, 713 N.E.2d at 664-65.

¶ 48        The situation in this case is distinguishable. Defendant filed a motion for the appointment of counsel approximately one week before his rescheduled sentencing hearing. The trial court was aware of the motion, considered the motion, and denied the motion. As has been repeatedly stated, defendant does not contest the court's ruling. Further, defendant had not entered a guilty plea in this case.

¶ 49        This case is inapposite to *People v. Miller*, 2020 IL App (1st) 163304, upon which defendant also relies. The issue in *Miller* pertained to a *Krankel* hearing (see *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984)), which is not at issue here.

¶ 50        Defendant in this case waived his right to counsel in the trial court from the sentencing phase forward. He does not challenge the denial of his motion for counsel to be appointed before his rescheduled sentencing hearing or complain he was not properly admonished before he waived his right to counsel. Further, defendant never made another request for the appointment of counsel to help him in the trial court with his motion to reconsider sentence. Based on the record in this case, the trial court did not err when it did not *sua sponte* appoint counsel to defendant after the sentencing hearing or readmonish defendant of his right to counsel for purposes of his motion to reconsider sentence.

¶ 51                                III. CONCLUSION

- 20 -

¶ 52        For the reasons stated, we affirm defendant's conviction in this case.

¶ 53        Affirmed.